BERRILLA K. VILES, Appellant

v.

JAMES VILES

No. 13,990

United States Court of Appeals

Third Circuit

Argued at Christiansted January 29, 1963

Decided March 21, 1963

*See, also, 316 F.2d 31*

416

ELIAS MESSING, ESQ., (HAYS, ST. JOHN, ABRAMSON & HEILBRON), New York, New York, *for appellant*

WILLIAM G. MULLIGAN, ESQ., New York, New York, *for appellee*

Before MARIS, WOODBURY AND HASTIE, *Circuit Judges*

HASTIE, *Circuit Judge*

This is an appeal from an order of the District Court of the Virgin Islands, entered on November 20, 1961 granting the appellee's motion to reduce the support payments required of him under the alimony provision of a divorce decree entered against him on December 8, 1951. The original decree required the appellee to pay the appellant for her support, in equal monthly installments, $5,500 per year so long as the husband's total annual income should be $17,500 or more, with provision for reduction of annual payments "proportionately" to not less than $3,600 whenever the husband's income should fall below $17,500.[1] The order appealed from abrogates the sliding scale and reduces the appellee's obligation to a flat $2,500 per year. It was entered after a hearing at which evidence was introduced. However, the court made no findings and did not disclose the reasoning upon which its decision was based.

The appellant contends that the district court could not lawfully modify an order awarding alimony where, as

---

[1] The exact language of the original decree is as follows:

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED, that the defendant pay, or cause to be paid, to the plaintiff the sum of $5,500.00 per annum as and for her support and maintenance, at the rate of $458.33 per month, beginning January 1, 1952 and continuing during the life of the plaintiff or until the plaintiff remarries. Provided, however, that if defendant's total income from all sources shall be less than $17,500.00 during any one year, then and in that case the allowances herein made for the plaintiff's maintenance shall be decreased proportionately for such year, except that in no case shall the defendant pay the plaintiff less than $3,600.00 per annum in any year."

This part of the decree was based on one of the provisions of a separation agreement made between the parties in October 1951. The language of the decree differs somewhat from the language of the agreement. The decree did not incorporate or approve any other parts of the agreement.

here, the order was based on an agreement of the parties. In the alternative, the appellant contends that the district court abused its discretion in the present instance.

■■ The appellant's first contention is without merit. Section 13 of the Divorce Law of the Virgin Islands, 1944, 16 V.I.C. § 110, expressly grants the district court power to "set aside, alter or modify so much of the judgment as may provide alimony . . . or the maintenance of either party in the action". This power is a normal concomitant of the power to enforce an alimony decree by summary contempt proceedings. See Goldman v. Goldman, 1940, 282 N.Y. 296, 26 N.E.2d 265; Ex Parte Jeter, 1940, 193 S.C. 278, 8 S.E.2d 490; Comment, 1940, 39 Mich. L. Rev. 120, 128.

■ The fact that the decree in the present case was drawn with reference to a separation agreement does not limit the court's power under section 13. Alimony is a creature of statute, reflecting public concern that dissolution of the marital contract be accomplished without unnecessary hardship to either spouse. The parties cannot oust the court of its jurisdiction to make an award of alimony as the equities of the case may dictate. A separation agreement between the parties may be helpful to the court in arriving at appropriate terms for an alimony award, but the court is not bound to accept the judgment of the parties on this issue. See 2 Nelson, Divorce and Annulment, 2d ed. Henderson 1945, § 14.36. The fact that an award of alimony has been based on a separation agreement may provide a sound reason for judicial reluctance to modify the original decree, Botkin v. Botkin, 1956, 247 Minn. 25, 77 N.W.2d 172. But when it is clear that circumstances have changed to such an extent that the decree and the agreement on which it is based are no longer serving the purposes for which alimony is awarded, then the court may ignore the agreement and modify the decree according to the necessities of the case. Simpson v. Supe-

rior Court, 1960, 87 Ariz. 350, 351 P.2d 179; Scanlon v. Scanlon, 1955, 60 N.M. 43, 287 P.2d 238; Goldman v. Goldman, supra; Briggs v. Briggs, 1946, 178 Ore. 193, 165 P.2d 772; Ex Parte Jeter, supra; Miner v. Miner, 1960, 10 Wis. 2d 438, 103 N.W.2d 4; Buchler v. Buchler, 1949, 65 Wyo. 452, 202 P.2d 670.[2]

It is particularly significant that in Goggans v. Osborn, 9th Cir. 1956, 237 F.2d 186, 189, the Court of Appeals for the Ninth Circuit took this view of judicial power in applying the section of the Alaska divorce statute on which section 13 of the Virgin Islands law is based. The court said:

> ". . . Although parties may contract as between themselves concerning the amount of alimony the allowance of alimony is incidental to the divorce procedure and requires the court's intervention to give it validity.
>
> "A decree providing for alimony, whether or not based upon a contract, may be modified or terminated upon the death of the husband, the remarriage of the wife or a change in the financial condition of the parties . . . .
>
> "These consequences flow from a decree for the payment of alimony because the duty to pay alimony, as well as support money for children, is public in nature. The commodity as a whole is vitally concerned. . . ." [Footnotes omitted.]

Finally, the existence of judicial power in this jurisdiction to modify an alimony award based upon earlier agreements of the parties was presupposed in Crawford v. Crawford, 3d Cir. 1958, 3 V.I.C. § 649, 254 F.2d 113. In that case, the original decree incorporated, without reference, the substance of support provisions contained in an earlier

---

[2] We are not here concerned with a decree settling the respective property rights of the spouses. See Scanlon v. Scanlon, supra; Briggs v. Briggs, supra. Neither are we concerned with the enforceability at law of any part of the separation agreement which may not have been affected by the decree of December 8, 1951. Compare Freeman v. Sieve, 1949, 323 Mass. 652, 84 N.E.2d 16, and Goldman v. Goldman, supra, with Hough v. Hough, 1945, 26 Cal.2d 605, 160 P.2d 15. See also Robertson v. Robertson, 1939, 34 Cal. App. 2d 113, 93 P.2d 175; cf. Flynn v. Flynn, 1954, 42 Cal.2d 55, 265 P.2d 865.

separation agreement between the parties. This court affirmed an order of the District Court of the Virgin Islands modifying the terms of the decree so as to make express provision for an eventuality which had not been clearly covered by either the agreement or the original decree. The only question raised was whether the court should have made even more drastic changes. We now make explicit what that decision necessarily implied, that the District Court of the Virgin Islands has power to modify a decree such as that originally entered in the instant case.

■ Appellant's second contention involves different considerations. Both section 12 of the divorce law, 16 V.I.C. § 109, permitting an award of alimony, and section 13, 16 V.I.C. § 110, permitting modification of the original award, confer a discretionary power on the court. In Burch v. Burch, 3d Cir. 1952, 2 V.I. 599, 582, 195 F.2d 799, 812, we pointed out that the discretion to award alimony in the first place should be exercised with due regard "to the conduct of both parties, the amount of property of each and all the other circumstances of the case". Cf. Burch v. Burch, 3d Cir. 1953, 2 V.I. 596, 205 F.2d 115. We must now discuss the considerations which should control the court's exercise of its discretionary power to modify an award of alimony.

■ ■ Obviously there must be some self-imposed limitations upon the court's exercise of this power. If either party to a divorce were permitted to invoke at will a full hearing and de novo adjudication of the fair amount of alimony, section 13 of the divorce law would become a potential vehicle for harassment and a source of wasteful litigation. Marriott v. Marriott, 1952, 347 Ill. App. 372, 106 N.E.2d 876. The courts in almost every American jurisdiction have recognized this problem and met it by holding that a party seeking modification of an alimony decree must allege such a substantial and continuing change of

circumstances since the entry of the original decree as to make continued enforcement of that decree unfair. See Nelson, op. cit., § 17.07. A large number of cases so holding are collected in Annot., 1951, 18 A.L.R.2d 10. This requirement has almost always been imposed without the benefit of express language in the controlling statute. See 2 Bernier, American Family Laws, 1932, Table LIV, at 277–82. In furtherance of this requirement, the original decree should be treated as a final adjudication of the rights of the parties at the time it is entered, and the court which entered it should be presumed, in the absence of a direct appeal, to have given appropriate consideration to the circumstances which should have affected its judgment. Sherman v. Kent, 1923, 223 Mich. 200, 193 N.W. 795. Moreover, it is quite proper for the court in framing the original decree to anticipate future changes in circumstances of the parties and to provide specific adjustments of the postmarital rights and duties of the parties which will be made in the event that the circumstances do change as anticipated. Condy v. Condy, 1946, 328 Ill. App. 8, 65 N.E.2d 219; Scheldrup v. Gaffney, 1952, 243 Iowa 1297, 55 N.W.2d 272; Raymond v. Raymond, 1956, 39 N.J. Super. 24, 120 A.2d 270. When it is clear that the court which entered the original decree has considered and provided for future eventualities, the party seeking a modification of his obligation should be required to prove more than that the events anticipated have actually occurred. See, e.g., Grant v. Grant, 1954, 223 Ark. 757, 268 S.W.2d 617; Keyser v. Keyser, 1922, 193 Iowa 16, 186 N.W. 438.

██ In this case, appellee's motion and the showing made in support of it established no significant change in circumstances beyond what had been anticipated and provided for in the original decree. In effect, that decree, by requiring support payments of $5,500 per year so long as appellee's annual income should be at least $17,500, fixed

11/35 as an equitable maximum ratio of alimony to appellant's income. The provision for "proportionate" reduction of payments to $3,600 per year permitted maintenance of that ratio so long as the husband's income did not fall below $11,455. Thus, the original decree was a considered adjudication of what adjustments in alimony would be fair under forseeable income fluctuations, at least as long as appellee's income was neither substantially more than $17,500 nor substantially less than $11,500.

Attached to his motion, appellee submitted an affidavit describing his financial circumstances since the original decree was entered in 1951. In that year, his income had consisted of $21,000 from two trust funds of which he is a beneficiary and $120.19 in salary from the photography studio which he operates in the form of a wholly-owned corporation. His highest earning year was 1953 when he received $31,000 and $10,800, respectively, from these two sources. Thereafter his income declined steadily. In 1958 he received only $13,500 from the trusts and nothing as salary from the corporation. At the hearing it was established that in 1959 the appellee's total income was at least $12,878.23, still well above the bottom of the original decree's sliding scale. Thus, appellee's income has never fallen below the level contemplated by the original decree. It follows that he did not show, or even claim, such reduced income as would provide a basis on which the court might properly reopen the original decree.

 Appellee's additional allegation that he must support a second wife does not change this conclusion. He cannot escape his obligation under the original decree by voluntarily assuming new domestic responsibilities which make performance more burdensome. Newburn v. Newburn, 1930, 210 Iowa 626, 231 N.W. 389.[3]

[3] Even if appellee had shown a relevant unanticipated deterioration of his position, the court should not have reduced support payments below the minimum provided by the original decree without careful consideration of

· If any evidence in the record, disputed or not, justified the abandonment of the essential terms and scheme of the original decree and the substitution of a flat $2,500 award we would merely send this case back to the district court for the making of findings of fact as required by Rule 52 (a), Federal Rules of Civil Procedure. Cf. Kruger v. Purcell, 3d Cir. 1962, 30 F.2d 830. But there is no such evidence. Accordingly, we decide that the court below erred in substituting an award of $2,500 annually for whatever larger amount appellant was entitled to receive under the original decree. However, it remains to consider what that larger amount is.

■ Appellee's income for 1959 is a disputed issue in this case. However, the dispute concerns legal characterization rather than fact. It is agreed that in 1959 appellee's income from trust funds was $12,878.23. However, appellant contends that appellee had additional income in the amount of $4,000 earned as salary from his incorporated, but wholly owned, photographic business. The record shows that this $4,000 salary was entered in the books of the corporation and that appellee personally reported this item as income in his 1959 income tax return. In addition, the accountant for both appellee and his corporation testified in detail concerning the handling of this item. The $4,000 was not paid to appellee but was credited to him on a "loan account of monies which the corporation owed him". The accountant also testified that during 1959 the corporation paid appellee more than $9,000 of the balance standing to his credit in the loan account before the $4,000 was added. It seems entirely clear that appellee, had he so chosen, could have achieved the same result by

the need of the appellant. See Burch v. Burch (both cases), supra; Nelson, op. cit., § 14.45. Apparently, this important factor was not taken into account.

For a case in which, all relevant factors considered, it was found just and proper to abandon a sliding scale and substitute a fixed amount of alimony, see Heuchan v. Heuchan, 1951, 38 Wash.2d 207, 228 P.2d 470.

simply taking $4,000 as current salary and $5,000 as repayment from the loan account. No proper business reason appears for adopting the more involved procedure.

Since appellee was entitled to a $4,000 salary, could have received it had he so elected, and achieved the same result by a different formal procedure, we think a court exercising equitable jurisdiction in administering an alimony award should treat this item as part of appellee's 1959 income. Thus, for purposes of computing the alimony payable under the scheme of the decree, appellee's income was $16,878.23.

We have not overlooked a few hundred dollars of undistributed corporate earnings which appellant would treat as income to appellee. However, the record does not warrant this conclusion.

Finally, it seems worthwhile to point out that neither this court nor the court below has evidence of appellee's income during the more than three years that have elapsed since 1959. On remand it is desirable that the court obtain this information, either by stipulation or by supplementary hearings, make appropriate findings of fact covering that period, and fashion an award under which the appellee's obligation to date will be fully determined under the scheme of the original decree. We also think it is most desirable, in order to avoid frequently recurring litigation over the administration of this decree, that the court, with the consent of both parties if possible, amplify the original decree to provide some method of measuring or verifying appellee's income which the parties themselves should be able to utilize without controversy. See, for example, the use of federal income tax returns for the preceding year in Lee v. Lee, 1946, 157 Fla. 439, 26 So.2d 177, which may be less satisfactory here because of the inclusion of corporate income in some of appellee's individual returns.

The judgment will be reversed and the cause remanded for further proceedings consistent with this opinion.