LAWRENCE E. HODGE, Appellant

v.

ERNESTINE HODGE, Appellee

No. 74-1376

United States Court of Appeals

Third Circuit

Argued December 3, 1974

Filed January 6, 1975

471

HENRY J. FEUERZEIG, ESQ., St. Thomas, V.I., *for appellant*

CLARICE A. BRYAN, ESQ., St. Thomas, V.I., *for appellee*

Before SEITZ, *Chief Judge*, and VAN DUSEN and ROSENN, *Circuit Judges*

### OPINION OF THE COURT

VAN DUSEN, *Circuit Judge*

This is an appeal from an adjudication of contempt and the modification and enforcement of certain terms of a divorce decree. The decree, which was filed on May 23, 1973, by Judge Young, of the District Court of the Virgin Islands, granted a divorce to both parties "on a 'no fault' basis." The decree gave both parties "equal legal custody of the child," with "physical custody" in the wife and "reasonable rights of visitation" in the husband. The court ordered the husband to pay $100. per month alimony and $15.00 per week child support. Further, the wife was to have rent-free occupancy of one of two downstairs apartments located in the house which the parties had owned during their marriage as tenants by the entireties.[1] Both husband and wife were to share equally debt service, taxes, and other costs of maintaining the jointly-held property.

In July 1973, the wife filed a motion for modification of the decree and clarification of visitation rights. That motion was assigned for hearing to Judge Hoffman, of the Municipal Court of the Virgin Islands, sitting by designa-

---

[1] The decree converted ownership of the house to a tenancy in common.

tion in the district court.[2] The motion was set down for hearing on September 26, 1973, to allow the taking of additional testimony. When neither the husband nor the attorneys for either party[3] appeared for the September 26, 1973, hearing, the matter was continued to November 21, 1973. As a result of the November 21 hearing, an order was filed December 5, 1973,[4] finding the husband in contempt for failure to pay both alimony and child support, and ordering increased payments to be made covering current and past due amounts in order to eliminate the arrearages. No substantial change in the situation of the parties was found to warrant any modification in the amounts of alimony or child support awarded by the May 23 decree. Another hearing was set for Decemebr 10, 1973;[5] that hearing led only to further continuances. The case was scheduled for Feb-

[2] Judge Louis Hoffman, of the Municipal Court of the Virgin Islands, was assigned to sit in the District Court of the Virgin Islands, Division of St. Thomas and St. John, to hear matrimonial matters by the Chief Judge of the Third Judicial Circuit of the United States, pursuant to 48 U.S.C. § 1614(a).

[3] Both parties have changed counsel during the course of these proceedings. The wife has been represented by three different attorneys at various times, the husband by two different attorneys.

[4] The December 5, 1973, order provided inter alia:
". . . the Court makes the following findings of fact and conclusions of law:
1. The Plaintiff has failed in the following respects to comply with the decision of Judge Warren H. Young, dated May 23, 1973;
a. To pay the $15.00 a week payments required for the support of the child, which for 28 weeks totals $420.00, minus one $60.00 payment.
b. To pay the $100.00 a month alimony payments from June through October, totaling $500.00.
2. That the Plaintiff is in contempt of Court for failing to make such payments.
3. That the Plaintiff will be allowed to purge himself of the contempt by making payments of $200.00 each month, applied retrospectively to November 1, 1973, $100.00 of which will be applied towards the current payments and $100.00 towards the arrears of $500.00.
"With regard to the support of the child, Plaintiff must make a payment of $30.00 each week, to be applied to a November 27, 1973 starting date, $15.00 of which will go towards the regular current support payments and $15.00 towards the arrears of $360.00."

[5] The December 10, 1973, hearing was scheduled for taking testimony as to the rental value of the apartments located in the jointly-held property, to establish the amounts paid on the mortgages by both parties, and to determine the husband's rights of visitation with the parties' child, Ann. However, the only result of the hearing was arranging for the husband to have custody of Ann for a weekend.

ruary 25, 1974, to accommodate the husband's attorney,[6] but his inability to appear led to another continuance until March 6, 1974.[7] Upon notification of the March 6 date, the husband's attorney immediately requested a continuance until April to accommodate his trial schedule. This request was denied in a letter dated February 26, 1974. The letter also suggested that the husband retain other counsel should his attorney remain unable to appear on March 6. This the husband declined to do, choosing to appear without counsel at the March 6 hearing and refusing either to testify or to cross-examine any witnesses. On the basis of the testimony at the hearing and an affidavit filed by the husband, the court orally announced its orders. Judge Hoffman determined that the husband was in contempt for continuing nonpayment of alimony and child support.[8] No sanction was imposed for the contempt; the court merely required that payments be made in accordance with the December 5 order. The trustee whom the court had appointed to collect rents and pay the mortgages on the jointly-held property was ordered to make arrangements for selling the property. The husband's monetary obligations under the divorce decree were to be deducted from his share in the proceeds of the sale. The court also suspended the husband's rights of visitation pending his payment of alimony and child support.[9] No reduction was ordered in the amount of alimony or child support, as requested by the husband.

---

[6] The case was first adjourned to January 14, 1974, but, due to Judge Hoffman's illness, it was postponed first to January 28, 1974, and then to February 25, 1974.

[7] The March 6 date was set for the convenience of the wife's attorney, since the husband's attorney failed to indicate a desired date for the adjourned hearing.

[8] The wife testified that she had received only $120. in child support since the December 5 order, although she was supposed to receive $30. per week under that order. The husband's affidavit stated that he had paid $60.00 per month in child support since October "in accord with the Decree and judgment of divorce." The husband does not claim, therefore, to have complied with the December 5, 1973, order.

[9] This in-court order was modified by the court, sua sponte, in the written order filed March 14, 1974, to allow six hours of visitation on Saturdays.

■ Notice of appeal to the court of appeals was filed in the district court on March 11, 1974. Judge Hoffman's written order was filed March 14, 1974. The appeal was thus premature. See Moore, Federal Practice, ¶ 204.14 at 981–82 (2d ed. 1973). So long as the order is an appealable one and the non-appealing party is not prejudiced by the prematurity, however, the court of appeals should proceed to decide the case on the merits, rather than dismiss on the basis of such a technicality. Foman v. Davis, 371 U.S. 178, 181 (1962); Hamilton v. Stillwell Van & Storage Co., 343 F.2d 453 (3d Cir. 1965).

We will consider the husband's allegations that the district court fatally erred in adjudging him in contempt and abused its discretion both in enforcing and in refusing to modify the May 23, 1973, divorce decree, as altered by the December 5, 1973, order.

## I.

■ ■ The husband asserts that the finding of contempt cannot stand because he was denied assistance of counsel by Judge Hoffman's refusal to continue the March 6, 1974, hearing until April. The matter of granting a continuance is within the discretion of the trial judge. United States v. Scott, 460 F.2d 45, 47 (3d Cir. 1972); United States v. Greenberg, 419 F.2d 808, 809 (3d Cir. 1969). The refusal to grant a continuance is not, without more, a denial of the right to counsel even though the refusal prevents a party from being represented by a particular attorney because of that attorney's other professional commitments. United States v. DiStefano, 464 F.2d 845, 846 n. 1 (2d Cir. 1972); United States v. Fields, 410 F.2d 371, 372 (3d Cir. 1969).

The Supreme Court of the United States, in Ungar v. Sarafite, 376 U.S. 575 (1964), considered a claim that denial of a motion for a continuance deprived the defendant in a contempt hearing "of his constitutional right to engage

counsel and to defend the charge." Id. at 589. The Court concluded that "[t]here are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances presented in every case, particularly in the reasons presented to the trial judge at the time the request is denied." Id. No denial of due process was found where the defendant, an attorney charged with criminal contempt for certain court room remarks, was given five days' notice to hire counsel and prepare a defense.

The husband in the case now before this court received 10 days' notice that the continuance had been denied and that he should obtain other counsel. As in Ungar, the evidence of contempt—nonpayment of moneys owing under the decree and ability to pay—"was fresh, the witnesses and the evidence readily available, the issues limited and clear-cut . . . ." Id. at 590.

■ The rule in this circuit, enunciated in United States ex rel. Carey v. Rundle, 409 F.2d 1210 (3d Cir. 1969), cert. denied, 397 U.S. 946 (1970), is that "although the right to counsel is absolute, there is no absolute right to a particular counsel." Id. at 1215. Carey held that the trial court had neither abused its discretion nor denied the defendant due process by failing to grant a third continuance so that the defendant could retain private counsel. The court noted that it was "desirable" for a defendant to "obtain private counsel of his own choice;" however, "that goal must be weighed and balanced against an equally desirable public need for the efficient and effective administration of . . . justice."

■■ The case now before the court presents both interests identified in Carey. Both at the March 6 hearing and on appeal, the husband asserted a right to be represented by particular counsel. This attorney was the second to represent the husband in the case, and had appeared on the hus-

band's behalf at only three hearings, all of which had been adjourned. Moreover, several matters relating to the case had not been handled personally by the attorney of choice, but by other attorneys in the office. No reason appears why one of these attorneys could not have represented the husband on March 6; the issues involved were not complex, either legally or factually.[10]

On the other hand, expeditious settlement of disputes relating to divorce decrees is essential to preserve the rights of the parties, particularly where, as here, the actual payment of sums owing is subject to manipulation by one of the parties. From the effective date of the decree, June 1, 1973, to the entry of the order appealed from, March 14, 1974, the husband had paid only $120.00 in child support; he had paid no alimony. The husband had also failed to make any of the mortgage payments ordered by the decree. As a result of this non-compliance, the jointly-held property was subject to foreclosure, which threatened the loss of the parties' substantial equity. An immediate sale of the property was possible and could avoid this loss, to the advantage of both parties. March 6, 1974, hearing, N.T. 25, 28. In addition, there was testimony that the wife and child were facing financial hardship. The case had been scheduled and rescheduled 10 times. Order of March 14, 1974, at 1–2. The nonappearance of the husband's attorney at the February 25 hearing demonstrated that there could be no certainty he would appear even if the requested continuance were granted. In light of the economic necessities and the prior delays, we have concluded, after careful consideration of the records, that the need to settle speedily the rights of the parties clearly outweighed whatever interest the husband had in being represented by a particular attorney. The

---

[10] Even where the desired counsel possesses special expertise, a court may, consistent with due process, refuse a continuance to accommodate counsel's trial schedules. "The Sixth Amendment right to counsel does not include the right to a lawyer whose other engagements prevent a speedy trial." United States v. DiStefano, 464 F.2d 845, 846 n. 1 (2d Cir. 1972).

continuance was properly denied. See United States v. Weathers, 431 F.2d 1258 (3d Cir. 1970); United States ex rel. Baskerville v. Deegan, 428 F.2d 714 (2d Cir. 1970); United States v. Restaino, 405 F.2d 628 (3d Cir. 1968), cert. denied, 394 U.S. 904 (1969).

■ The husband's affidavit, dated March 4, 1974, which was before the court at the March 6 hearing, put into issue his ability to pay. We find, however, ample support in the record for the court's conclusion that the continued non-payment constituted contempt.[11] Poe v. Poe, 409 F.2d 40, 44 (3d Cir. 1969). The husband makes no claim that he has made payments ordered by the decree. Indeed, the affidavit itself clearly reveals his non-compliance with the December 5 order to pay $30.00 per week in child support.[12]

The court having authority to enforce the decree through its contempt power, Bergen v. Bergen, 439 F.2d 1008 (3d Cir. 1971), and there being no denial of the right to counsel or other due process right, the judgment of contempt will be affirmed.

## II.

■ The husband also alleges that the court abused its discretion in refusing to modify the alimony award ordered in the May 23, 1973, decree. The burden is on the party urging modification to "allege such a substantial and continuing change of circumstances since the entry of the original decree as to make continued enforcement of that decree unfair." Viles v. Viles, 316 F.2d 31, 34 (3d Cir. 1963). At the November 21, 1973, hearing, Judge Hoffman found that "despite the variances and discrepancies that counsel for

---

[11] Although the husband claims, at page 11 of his brief, that the court made no finding of willfulness, at page 15 of the brief he alleges that the court found both husband and wife in "equally willful" violation of the decree. See November 21, 1973, hearing, N.T. 123 ("each of these parties has failed to comply with Judge Young's decree ... in a flagrant manner ....").

[12] The December 5 order was within both the power of the court and the proper scope of its discretion. See Viles v. Viles, 316 F.2d 31, 34 (3d Cir. 1963).

Mr. Hodge has brought forth," N.T. at 123, modification of the alimony award was unwarranted. We find nothing in the record which indicates either that the husband carried his burden under Viles or that the district court erred in failing to modify the award.[13] See Poe v. Poe, 409 F.2d 40, 44 (3d Cir. 1969).

## III.

In addition, the husband attacks certain modifications of the decree as abuses of discretion. Among these are the hours of visitation established by the March 14, 1974, order,[14] and the order that sums owing under the decree be deducted from the husband's proceeds when the jointly-held property is sold.[15] The calculation of the amount owed as child support is also challenged.

 We have been unable to discover in the record any findings by the trial judge to justify the change in the husband's visitation rights, reflected in paragraph 4 of the March 14 order. Cf. Viles v. Viles, 316 F.2d 31 (3d Cir. 1963). At the December 10, 1973, hearing (p. 11), the trial

---

[13] The husband points out that the wife's net, rather than gross, earnings are approximately $5,600.00 per year. In the decree of May 23, 1973, the court found that her *gross* was about $5,000.00. The husband also claims that he has been unable to pursue his part-time business of making screens since his shop, located in the jointly-held property is no longer accessible to him. Thus he contends the differential between his earnings and the wife's earnings is less than $3,000.00, while the decree was premised upon a differential of at least $5,000.00. Taking into account the whole of the testimony, however, we note that there are offsetting discrepancies and we agree with Judge Hoffman that these discrepancies do not indicate a change in the wife's needs sufficient to require modification of the decree. Viles v. Viles, 316 F.2d 31, 35 n. 3 (3d Cir. 1963).

The husband also urges that the alimony award be reduced to offset the imputed income which the wife is receiving by virtue of remaining in the larger, upstairs apartment, rather than moving into a smaller, downstairs apartment, as ordered by the May 23, 1973, decree. We note that such a reduction is within the power of the court. Poe v. Poe, 409 F.2d 40, 44 (3d Cir. 1969). However, after consideration of the record, we have concluded that the refusal of the court to reduce the award is within its sound discretion. Id. No abuse of discretion appears.

[14] See note 9, supra.

[15] The husband challenges, inter alia, that part of this order which requires him to reimburse the wife for unpaid mortgage payments required of him by the May 1973 Memorandum Opinion and Decree. We reject this contention.

judge concluded that the provisions of the May 1973 decree concerning visitation should "continue." No evidence was produced at the March 6, 1974, hearing to support any change in that conclusion.[16] Since the trial judge stated on March 6, 1974 (p. 32), that "visitation rights shall not continue" until the husband "has liquidated the arrears," it appears that the March 14 modification of visitation rights was punitive. Under these circumstances, denial of visitation rights is not justified where, as here, the record indicates that the primary purpose is to punish a parent for failure to pay support money for his child. See, e.g., Comm. ex rel. Lotz v. Lotz, 188 Pa. Super. 241, 244, 246, 146 A.2d 362, 363–64 (1958), aff'd, 396 Pa. 287, 152 A.2d 663 (1959);[17] 88 A.L.R.2d 143, 163–64 and 204–05; Clark, Domestic Relations, 590, cf. 507–10 (1968).

---

[16] We recognize that visitation programs such as that followed in the December 11, 1973, decree appear to have merit, but the absence of findings to support the above-mentioned paragraph 4, combined with the indication that the terms of such paragraph 4 were punitive, require the vacation of that paragraph.

[17] In the Lotz case, the court explained the rationale of this principle as follows:

". . . mere failure to support is not grounds for refusing visitation rights.

"A thorough review of the record in this case does not reveal sufficient evidence to warrant the termination of appellee's visitation rights. It is against public policy to destroy or limit the relation of parent or child. [Citing cases.]

"A parent has seldom been denied the right of visitation. The cases in which visitation rights of a parent have been limited or denied have been those in which severe mental or moral deficiencies of the parent have constituted a real and grave threat to the welfare of the child. [Citing cases.] The courts have granted visitation rights to parents even in those circumstances where the parent has ignored the children for a long period of time. [Citing cases.] . . .

. . .

"Certainly if the court can remove a child from the custody of its parents, it can, for the welfare of the child, conversely order custody or visitation with a parent.

"Visitation rights of a parent not in custody have long been a matter of concern to the law of this Commonwealth. They must be carefully guarded for when parents are separated and custody is placed in one of the parents, there exists a danger that the parent having custody of the child may use his or her advantageous position to alienate the other parent from the affections of the child." 146 A.2d 363–64.

See also Comm. ex rel. Meta v. Cinello, 217 Pa. Super. 94, 95, 268 A.2d 135, 136 (1970).

 The power of the court to modify the May 23, 1973, order and to order the sale of the jointly-held property is conceded.[18] We are unable to detect any abuse of this power in the orders of the court, which find ample support in the record. To the extent that there is any doubt about the correctness of the amount owing for child support, we find that the husband waived his right to challenge that amount by failing to controvert the testimony at the March 6, 1974, hearing. As a court of equity, the district court has the power to order the deduction of sums owing by appellant under the court's decrees from the appellant's share of the proceeds of any sale of the real property now held by the parties as tenants in common.

## IV.

We will determine motions filed by appellee under date of August 13, 1974, as follows:

(1) The motion that additional docket entries be added to appellant's designated record and be contained in the record on appeal is granted.

(2) The motion to include in the record on appeal correspondence relating to matters occurring after the March 14, 1974, judgment is denied.

(3) The motion that appellant reimburse appellee for transcripts pursuant to Rule 10(b), F.R. App. P., is denied, without prejudice to its renewal in the district court in accordance with F.R. App. P. 39(e).[19]

(4) The motion that the court-appointed trustee not accept appellant's offer to buy the jointly-held property pending further order of the district court is denied, without prejudice to such an application being made to the district court in the first instance.

---

[18] See also note 12, supra.

[19] The district court record shows that transcripts (3 volumes) of testimony taken on these dates were filed in the district court on 7/12/74: November 21, 1973, December 10, 1973, February 25, 1974, and March 5, 1974. Such transcripts appear to have been necessary for the determination of this appeal. However, Rule 39(e) provides that such costs "shall be taxed in the district court."

For the foregoing reasons, the district court order of March 14, 1974, will be affirmed, except that paragraph 4 of that order shall be vacated and visitation rights shall be governed by the May 23, 1973, Memorandum Opinion (p. 4) and Decree until the district court makes a further order on such subject, supported by appropriate findings based on a proper record. The mandate shall issue forthwith.