MEDINA ROGERS, Plaintiff

v.

EDWARD ANDREW ROGERS, Defendant

Family No. 153-77

Territorial Court of the Virgin Islands

Div. of St. Thomas and St. John

September 21, 1977

MARIA TANKENSON HODGE, ESQ., St. Thomas, V.I., *for plaintiff*

JAMES R. COLEMAN, ESQ. (GRUNERT, STOUT, HYMES AND MAYER), St. Thomas, V.I., *for defendant*

FEUERZEIG, *Judge*

### INTERIM CUSTODY ORDER

Medina Rogers and Edward Andrew Rogers are before the court in an action for divorce filed by Mrs. Rogers on March 11, 1977. The parties were married on May 5, 1962, in St. Thomas, Virgin Islands, and of the marriage three daughters were born: Patricia, who will be 16 in November, Sandra 14, and Ingrid, 12. They contest the custody of their three minor children, the awarding of alimony and child support, and the disposition of four parcels of St. Thomas realty acquired during the marital union. The testimony adduced at the trial on July 12 and 15, 1977, manifests the complexity of determining each party's equitable and legal interest in the four parcels of real property. Moreover, the authority of this court to enter orders regarding the disposition of realty in divorce actions is limited, Todman v. Todman, 13 V.I. 599 (D.V.I. 1977).[1]

Until the court can make appropriate findings and conclusions of law relevant to the respective property interests and determine what, if any, duty of support should be imposed on either party, the court will adjudicate the issue of custody. While a piecemeal decision is not the most desirable solution, the court believes it must give primary consideration to the custody dispute and the welfare of the children. Delaying a decision on custody until the court unravels all the complexities of the real property issue and how this issue relates to the question of

---

[1] The court at the conclusion of the trial requested both sides to submit proposed findings of facts and conclusions of law, as well as memoranda in support thereof. Both sides on August 25, 1977, submitted their memoranda.

support and this court's authority to deal with these issues, see Todman v. Todman, supra, will not promote the welfare of the children. With school just beginning again it is most important for the court to act now so the children can get settled early in the school year and undergo as little disruption as is possible upon the entry of this court's order.

APPLICABLE STANDARDS FOR DETERMINING CUSTODY

Before instituting the present divorce action, the parties separated on June 19, 1975, and a decree of legal separation was entered by the Honorable Cyril Michael on July 11, 1975, in another case, Rogers v. Rogers, Civil No. 74/729 (District Court of the Virgin Islands, Division of St. Thomas and St. John). That action also was instituted by Mrs. Rogers; Mr. Rogers, although served with process, did not appear in the prior proceeding. In his absence, Judge Michael found Mr. Rogers in default and found Mrs. Rogers to be a fit and proper custodian and awarded her custody of the children. There is no dispute that this finding has collateral estoppel effect as to the wife's fitness on July 11, 1975, and, in fact, the parties have so stipulated.

By virtue of Title 4 V.I.C. § 76, as amended by Act No. 3876 (adopted September 9, 1976), the Territorial Court has jurisdiction of divorce proceedings concurrent with the U.S. District Court. As part of its jurisdiction in divorce actions this court has the power to grant custody of the children of a marriage. Title 16 V.I.C. § 109(1). In addition, the Territorial Court, concurrently with the District Court, is vested with the power to modify custody orders. Title 16 V.I.C. § 110. The fact that the July 11, 1975, custody order was issued by the District Court, which has appellate jurisdiction of Territorial Court orders pursuant to Title 4 V.I.C. § 33, does not preclude this court from ordering a contrary custodial arrangement based

upon the present circumstances of the parties. This is particularly so where, as here, both parties have submitted to the jurisdiction of this court in the present divorce action.[2]

Title 16 V.I.C. § 110 provides that

At any time after a judgment is given the court, upon the motion of either party on notice, may set aside, alter or modify so much of the judgment as may provide alimony or for the appointment of trustees, for the care and custody of the minor children, or the nurture and education thereof, or the maintenance of either party in the action.

This section means that final orders previously entered in the same action may be modified when a change of custody is sought. Thus, if Mr. Rogers had filed a motion for a change in custody in Civil No. 74-729, the action for legal separation, then he would have had to satisfy the burden of proof applicable to the modification of judgments under § 110. Mrs. Rogers has filed a new action, however, and now seeks to terminate the marriage that was left intact by the separation decree. The custodial arrangement ordered in the July 11, 1975, decree was based upon the court's inherent equitable jurisdiction to make orders concerning the care and custody of a minor, Emrick v. McNeil, 75 App.D.C. 307, 126 F.2d 841 (1942); 24 Am.Jur.2d Divorce and Separation § 772, and not upon Title 16 V.I.C. § 109(1), which only applies "whenever a marriage is declared void or dissolved."

■ Assuming, however, that this action were to be considered as one seeking modification of the July 11, 1975, legal separation decree, the issue would be whether a change in circumstances must be shown. On this issue there

---

[2] Because of the result the court reaches in the instant case and the conclusion that a sufficient showing has been made to satisfy the change of circumstances test, the court need not and does not decide whether the standards of Title 16 V.I.C. § 109(1) or the more rigorous standards of Title 16 V.I.C. § 110 must be applied.

134

is a split of authority as to whether one seeking to modify a custody order bears the burden of proving a change in circumstances subsequent to the original decree. H. H. Clark, Law of Domestic Relations, § 17.7, at 599 (1968). Title 16 V.I.C. § 110 does not specify the elements of proof that must be met to entitle a party to modification of a custody order. The U.S. Court of Appeals for the Third Circuit, however, has interpreted this statute as requiring that a change in circumstances must be shown when modifying an alimony award. Viles v. Viles, 4 V.I. 415, 316 F.2d 31 (1963). Circuit Judge Hastie reasoned:

> Obviously there must be some self-imposed limitation on the court's exercise of this power. If either party to a divorce were permitted to invoke at will a full hearing and de novo adjudication of the fair amount of alimony, section 13 of the divorce law (16 V.I.C. § 110) would become a potential vehicle for harassment and a source of wasteful litigation . . . . The courts in almost every American jurisdiction have recognized this problem and met it by holding that a party seeking modification of an alimony decree must allege such a substantial and continuing change of circumstances since the entry of the original decree as to make continued enforcement of that decree unfair.

4 V.I. at 421–422, 316 F.2d at 34. Such a requirement also logically follows from the doctrine of collateral estoppel. Consequently, unless the disappointed party to the prior adjudication can establish that the facts are altered to the point that the best interests of the child require modification of the order, collateral estoppel will bar any claim to relief.

A further and more basic consideration forces this court to conclude that the rationale of Viles, which was concerned solely with alimony, is equally persuasive and even more compelling when considering modification of a custody order. The pressures in a custody dispute, great as they are between the adversary parties, often are even more severe for the child or children involved. It is the *child*

whose fate becomes uncertain each time a potential custodian petitions a court to set aside the status quo. If custody adjudications lack relative permanency, a child faces the risks of perpetual readjustment to a changing home environment as well as to the abandonment of love and security that may already have been established. Consequently, requiring a petitioner to allege and prove a substantial and continuing change of circumstances will lend to the previous custody order a degree of permanency sufficient to foster the child's best interests.

## FACTS

Utilizing this standard the court will consider the facts it finds to have been established by the evidence. Title 5 V.I.C. App. 1 Rule 52. Subsequent to the June, 1975, separation, Mrs. Rogers and the children resided at No. 264 Hospital Ground in a three-bedroom dwelling while Mr. Rogers resided at No. 1-104 Wintberg, the family's home before the breakdown of the marital relationship. The three daughters have stayed with their father on weekends and during vacations. Since August of 1975 Mrs. Rogers' mother also has lived at No. 264 Hospital Ground, occupying a separate room connected to the house.

■ I find that both parents are suitable custodians in spite of Mrs. Rogers apparent involvement in another relationship. Although Mrs. Rogers testified on cross-examination that she never brought any male friends into the home with whom she was romantically involved, the testimony of all three children establishes that their mother often entertained a male visitor, usually in her bedroom behind locked doors. Although the morals and conducts of the parties are relevant to a determination of custody, Hodge v. Hodge, 13 V.I. 561 (D.V.I. 1977), I do not consider this involvement of Mrs. Rogers to be of such a nature as to disqualify her as a potential custodian of her

children. While she should have exercised better judgment by acting with greater discretion, she did, nevertheless, make some attempts to be discrete and there is no other evidence that supports a different result.

The father's conduct clearly warrants a finding that he is qualified to care for these children. Mrs. Rogers admitted that Mr. Rogers buys the children's clothes and funds their recreational needs. He picks them up every morning at No. 264 Hospital Ground and takes them to school at Sts. Peter and Paul. On Friday afternoons he picks them up after school and often takes them to dinner. The children, while in his custody, follow a work schedule of washing clothes and cleaning house. His capacity for supervision and training is sufficiently demonstrated by the evidence.

There were claims by each party that the other has a drinking problem. In addition, the mother attempted to show that Mr. Rogers is subject to moments of violence. None of these claims was adequately supported to sufficiently denigrate either party's capacity to be custodian of the children. The incidents of physical confrontations between the parties all relate to periods of emotional turmoil during the time of their separation. The evidence establishes that both parties drink alcoholic beverages, but it does not establish that either abuses this habit.

Mr. Rogers and the children all testified to Mrs. Rogers' mother's excessive drinking, which evidence was uncontradicted. Mrs. Rogers testified that whenever she goes out at night or works late, the children are cared for by their grandmother. The custodial environment of the children is a factor clearly relevant to a custody award. Under normal circumstances this arrangement would weigh favorably toward granting Mrs. Rogers custody if the grandmother were a suitable individual with whom to entrust the children. There was evidence, however, that Sandra has slept in the same bed as the grandmother and

that during these times the grandmother is often intoxicated and wets the bed. This kind of home environment is not beneficial to the children's development, particularly since Mrs. Rogers by her own admission goes out two or three nights each work week and leaves her mother to care for the children.

The desire of a parent for custody also is relevant, and Mr. Rogers' past conduct manifests his genuine concern for his children. For example, when Sandra required medical attention for scoliosis, a curvature of the spine, Mr. Rogers took her to a specialist in Puerto Rico while Mrs. Rogers spent the weekend in St. Kitts. Mrs. Rogers' frequent absences from the Hospital Ground home on week nights when the children are there also indicates less of a desire for custody than that exhibited by Mr. Rogers.

██ The children's custodial preferences also must be considered by the court, giving those preferences a weight commensurate with each child's age, maturity and intelligence. By stipulation, each child was interviewed informally and confidentially in chambers by the court without the presence of counsel. The undersigned, while sitting by designation as a District Court Judge, has taken the opportunity to discuss the viability of the "tender years" presumption in this jurisdiction. Hodge v. Hodge, supra at pp. 4–8. In this case, the children are ages 15, 14 and 12. As a result, it is quite doubtful that they can be considered to be of tender years from a legal perspective. See e.g., Moore v. Smith, 499 S.W.2d 634 (Ark. 1973). Both parents also are employed, although Mrs. Rogers works only part-time as a secretary to a local attorney. However, in view of the ages of these children and both parents' employment, the "tender years" presumption under these circumstances should be given little weight and the daughters' preferences should be considered without relying upon the presump-

138

tion. In re Custody of Carlisle, 225 Pa. Super. 181, 310 A.2d 292 (1973).

A consistent element in each child's testimony was the assertion that each can communicate well with the father. Patricia, the oldest, maintained that when her parents were living together she looked forward to her father coming home after work because her father would talk to her. She feels lonely while living at Hospital Ground with her mother, but always looks forward to being at the Wintberg home with her father. Patricia said that her father often plays with her and her sisters, and that he stresses to them the value of a college education and that they should not marry for dependence, but for love. Patricia believes her mother should spend more time at home with the three daughters. Sandra "talks about all sorts of things" with her father. Ingrid, the youngest, said she can talk and play with her father, but when things bother her she goes to her sisters instead of either parent. No useful purpose would be served by disclosing the children's negative comments about either parent, except to say there were fewer negative feelings expressed about their relationship with their father than with their mother.

All three children prefer to stay with their father. This unanimous preference must be evaluated by the court with two considerations in mind. First, each child is intelligent and mature. Patricia, presently in eleventh grade, expressed an interest in child psychology and hopes to attend college, as does Sandra. The court finds Patricia and Sandra capable of making an intelligent choice. Hodge v. Hodge, supra, at p. 13. Secondly, the court must consider the impact of the past custodial arrangement during which time the children have been with Mrs. Rogers during the week and with Mr. Rogers on weekends and vacations. This certainly has had an effect on the children's perspective of each parent. Plaintiff argues in her August 25, 1977, brief

at p. 4 that "where circumstances allow one parent to provide more attention and recreation to the children merely because of the timing of the visitation schedule, the children are prone to develop a distorted view of what full-time custody with that parent would be like." It should be pointed out that Judge Michael's July 11, 1975, decree of legal separation did not order any specific visitation schedule but merely reserved reasonable rights of visitation to Mr. Rogers. Mrs. Rogers was not legally barred from making other visitation arrangements. Moreover, the custodial arrangement that *was* followed did not in itself preclude Mrs. Rogers from providing attention and recreation to the children in view of her part-time employment. Mrs. Rogers' frequent evening absences were not the result of economic pressures or other important reasons.

The court has reviewed all the evidence adduced relevant to a custody award and concludes that the circumstances have changed substantially since July 11, 1975, in a manner contrary to the best interests of the children, and that an award of custody to the father is warranted both under Title 16 V.I.C. § 110 and Title 16 V.I.C. § 109(1). The issue of child support and alimony will be determined when the court resolves the interests of the parties in the realty. Accordingly, it is hereby

ORDERED that the care, custody and control of the minor children of the parties, to wit: Patricia Rogers, Sandra Rogers, and Ingrid Rogers, are hereby awarded to the defendant, Edward Andrew Rogers, with reasonable rights of visitation reserved to the plaintiff, Medina Rogers.