**JULIE ANN FOSTER, Appellant**
**v.**
**JOHN P. FOSTER, Appellee**

D.C. Civ. App. No. 1999/156

District Court of the Virgin Islands

Division of St. Thomas and St. John

June 24, 2005

HENRY L. FEUERZEIG, ESQ., St. Thomas, U.S.V.I., *Attorney for Appellant.*

JAMES M. DERR, ESQ., St. Thomas, U.S.V.I., *Attorney for Appellee.*

FINCH, *Chief Judge, District Court of the Virgin Islands*; GOMEZ, *Judge of the District Court of the Virgin Islands*; and HODGE, *Judge of the Superior Court, Sitting by Designation.*

## MEMORANDUM OPINION

(June 24, 2005)

The appellant filed a motion in the trial court seeking modification of a prior order of visitation, citing changed circumstances in the lives of the children, and seeking the right to unilaterally adapt the visitation schedule to the children's needs. Meanwhile, the appellee filed motions to compel adherence to the court's existing visitation order and to show cause why the appellant should not be held in contempt for failure to adhere to the court's order regarding visitation. Following a hearing on those motions, the trial court denied the appellee's motions. However,

the court left intact the substantive visitation schedule and implored the parties to improve their communication to implement the visitation plan. The court further appended to its ruling an alternative, self-executing modification, to become effective should the parties reach a total impasse on reasonable modifications to the visitation schedule necessitated by changing circumstances. That alternative modification provided that each parent would share two weeks each month with the children. Julie Ann Foster now appeals from that order, arguing:

> 1. The Territorial Court[1] exceeded its statutory authority under Title 16, sections 101-111 of the Virgin Islands Code by *sua sponte* effecting a prospective modification of its child custody order, in the event of an impasse, without notice to the parties and without making findings of fact articulating the basis for such modification.
>
> 2. The Territorial Court acted contrary to law and denied Appellant due process of law when it precluded the parties from returning to court to seek enforcement or modification of a court order.

[Br. of Appellant at 2]. The appellee counters that the court's order affected only visitation and that the self-executing provision challenged here constituted invited error. Alternatively, the appellee contends that findings regarding the requisite change in circumstances to warrant a modification may be found in the record.

For the reasons set forth below, this Court will decline to reach the merits of the appellant's arguments that the alternative visitation plan effected a *de facto* modification of child custody without adherence to statutory procedures, as the challenged alternative plan has not taken effect. The Court additionally holds that the trial court's order did not, by its plain language, bar the parties from returning to court, as the appellant suggests.

## I. STATEMENT OF FACTS AND PROCEDURAL POSTURE

Julie Ann Foster ["Julie" or "appellant"][2] and John Foster ["John" or

---

[1]    That court is now the Superior Court.

[2]    Julie indicates to the Court that she has now remarried and now bears the name, Julie Ann Cassinelli. However, for the sake of consistency with the trial record and the above caption, we will continue to refer to her in the appellate record as Julie Ann Foster.

"appellee"][3] were married and together had two children, Olivia, born on June 10, 1990, and Sophia, born August 9, 1992. [Joint Appendix ("J.A.") at 4]. The couple was divorced by order entered June 6, 1996, and an agreement regarding custody and visitation was incorporated by reference into the Divorce Decree. [J.A. at 1-7]. That agreement granted "sole legal and physical custody" of the children to Julie.

Further, Paragraph 2 of the agreement granted visitation to John as follows: alternate weekends from Friday through 6 p.m. on Sunday; mid-week visits on Wednesday and Thursday from after school to 7 p.m. during those weeks he does not have weekend visits with the children; three weeks during the summer vacation; on alternate territorial and national holidays during the school year in addition to alternate Christmas and Thanksgiving holidays; and time spent with the respective child on her birthday. [J.A. at 4-5].

The parties experienced problems in handling the visitation issues and in modifying visitation periods as the situation required. From the record, it appears that the appellee, in response to the appellant's practice of unilaterally adjusting the visitation, filed a motion seeking a contempt order against the appellant. [*See* Pl's Mot. for Modification of Visitation Order, Supplemental App. at 295-96]. The court, apparently informally, referred the parties to mediation, in which the parties entered into a 60-day interim agreement. [*Id.*; *see also* J.A. at 12].

Convinced the visitation schedule to which the parties had agreed was working a hardship on the minor girls and was no longer workable, Julie petitioned the lower court for a Modification of Visitation Schedule. [Joint Supplemental App. ("Supplemental App.") at 284-304]. Julie asserted that significant changes in the children's development and activities, as well as John's failure to spend quality time with the children during his appointed visitation periods and the parties' inability to communicate, warranted such modification to protect their well-being. [*Id.* at 285, J.A. at 171-72]. The requested modification sought primarily to eliminate the mid-week visits and also sought to impose various new requirements governing the conduct and quality of the appellee's visits with the children. [*Id.* at 286-92]. The appellant additionally sought to add a provision recognizing the appellant's "right to unilaterally modify, alter and amend the visitation when, in her sole opinion, to do so is

---

[3]    John has also now remarried and has two children with his current wife.

necessary or beneficial for the best interests of the children." [Supplemental App. at 289; *see also* J.A. at 171-72].

John also filed motions to compel enforcement of the prior visitation order and seeking to find Julie in contempt for failure to adhere to the prior agreement affecting visitation. [See J.A. at 10-11, 56-59]. The court denied both John's motion to show cause and motion to compel, but granted in part[4] and denied in part Julie's motion for modification, finding the existing agreement workable if the parties improved their communication and attitudes toward each other. [J.A. at 269-70]. However, apparently frustrated with the parties' inability to confer to resolve even the most mundane issues or reschedulings required as conflicts arose, the trial court also included in its order an alternative, self-executing visitation schedule in the event the parties reach a "total impasse" and are unable to agree to reasonable modifications necessitated by the changing circumstances. In that regard, the court noted:

> In order to urge the parties where there is a situation that calls for them to sit down and negotiate in good faith some way of agreeing to portions that require agreement, the Court is going to order that in the event that there is a total impasse in trying to make this agreement workable, the backup plan will be ordered, that one parent will have the children for two weeks and the other one would have it (sic) for two weeks and then there wouldn't be anymore problems.

> The Court does not think that's a good way to deal with it, but to come back in and out of Court to, you know, quibble about things that can be resolved, doesn't make any kind of sense, and for one party to think that they have additional power over the other party is not helping the situation.

> So the Court Order, in effect, other than reinterpreting the provisions with respect to the summer is that the custody and

---

[4] The court granted the motion to the extent it added a modified provision permitting John to make up one missed scheduled visitation per month and added a provision permitting the children to contact their mother by-telephone during visitations with their father. [J.A. at 276-77]. That court also clarified what the agreement required for visitation during the summer months.

visitation agreement of April 24, 1996 is workable, and the Court finds that it should continue to be in full force and effect, and that in the event that the parties find it necessary to continue to have an impasse where the agreement requires them to sit down and to agree and they cannot agree, instead of getting into a new situation where they come into Court for further modifications, **the Order will automatically be self-executing, that when they cannot agree and reasonable agree to any problems that may arise in here, then automatically each parent will have the children for two weeks alternately,** [sic]

[*See* Ct's Findings of Fact and Conclusions of Law, Transcript of Hearing, J.A. at 271-73] (emphasis added). The court's ruling was reduced to a written order entered August 11, 1999, in which it purported to leave intact the existing order but again made clear that in the event of a "total impasse" the visitation agreement would be deemed automatically modified, as noted above, "without further Order of this Court." [See Ct's Order, J.A. at 277]. That alternate language is the subject of the current dispute.

## II. DISCUSSION

### A.  Jurisdiction and Standard of Review

#### 1. Standards of Review

This Court has jurisdiction to consider final orders of the trial court in civil matters. *See* The Omnibus Justice Act of 2005, Act No. 6730, § 54 (amending Act No. 6687 (2004), which repealed 4 V.I.C. §§ 33-40, and reinstating appellate jurisdiction provisions); Revised Organic Act of 1954 § 23A, 48 U.S.C. § 1613a.[5] In exercising its jurisdiction accordingly, this Court generally affords plenary review to questions of law or the application of legal precepts, and reviews factual findings for clear error. *See In re Custody and Control of Murphy*, 171 F. Supp. 2d 499, 503 (D.V.I. App. Div. 2001); *Feddersen v. Feddersen*, 68 F. Supp. 2d 585, 598, 41 V.I. 230 (D.V.I. App. Div. 1999).

---

[5]  The complete Revised Organic Act of 1954 is found at 48 U.S.C. §§ 1541-1645 (1995 & Supp. 2003), *reprinted in* V.I. CODE ANN. 73-177, Historical Documents, Organic Acts, and U.S. Constitution (1995 & Supp. 2003) (preceding V.I. CODE ANN. tit. 1).

We review modification of visitation or child custody for abuse of discretion. *See In re Murphy*, 171 F. Supp. 2d 499; *Rogers v. Rogers*, 14 V.I. 130, 135 (Terr. Ct. 1977) (applying standard for review of custody orders to visitation issue) (quoting *Viles v. Viles*, 316 F.2d 31, 4 V.I. 415 (3d Cir. 1963)); *see also* 16 V.I.C. § 110 (giving discretion to alter final child custody orders). In that regard, the trial court's findings of fact are not to be disturbed on appeal unless clearly erroneous, and its application of legal precepts are reviewed *de novo. See Bloice v. Government of V.I. ex rel. Bloice*, 30 V.I. 128 (D.V.I. App. Div. 1994); *Feddersen*, 68 F. Supp. 2d at 598.

## 2. Appealability of Conditional Order.

The alternate conditions stated in the order at issue here have not, based on the current record, gone into effect and will not become effective until such time as a "total impasse" is declared. Therefore, though not raised by either party, we must decide as a threshold matter whether this issue is ripe for review. *See e.g., Marshall v. Lansing*, 839 F.2d 933, 940 (3d Cir. 1988) (noting court's responsibility to address its own jurisdiction, *sua sponte*); *see also Binker v. Pennsylvania*, 977 F.2d 738, 753 (3d Cir. 1992) (discussing ripeness doctrine); *Sierra Club v. Morton*, 405 U.S. 727, 31 L. Ed. 2d 636, 92 S. Ct. 1361 (1972).

■ Orders which are effective only upon satisfaction of a condition precedent are ordinarily deemed interlocutory in nature and are unappealable, except upon satisfaction of the special procedural requisites for obtaining review of that class of orders. The rationale for denying review is that, because such orders become final only upon satisfaction of a condition, they are susceptible to amendment by the trial court at any time up until final judgment, as well as because awaiting a final decision favors policies against piecemeal appeals. *See In Re Fleetwood Motel Corp.*, 335 F.2d 857, 862 (3d Cir. 1964) (determining that review of conditional order was premature where none of the conditions on which the alternative order was premised had been met); *cf. Lusardi v. Xerox Corp.*, 747 F.2d 174, 175 (3d Cir. 1984) (discussing conditional order in context of class certification and determining there was no appellate jurisdiction to consider conditional order)); *see also*, 15 CHARLES A. WRIGHT AND ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE §§ 3911, 3911.1 (1976) (the purpose of finality rule is to disallow appeal from any decision which is "tentative, informal or

incomplete. Appeal gives the upper court a power of review, not one of intervention. So long as the matter remains open, unfinished or inconclusive, there may be no intrusion by appeal") (citations omitted).

Abstaining from reviewing orders premised upon a condition is also consistent with prudential considerations disfavoring judicial decision on matters that have not fully ripened into an actual and immediate controversy. *See e.g., Binker*, 977 F.2d at 753; *Armstrong World Indus., Inc. v. Adams*, 961 F.2d 405, 411 & n.12 (3d Cir. 1992). As the *Binker* Court noted, the requirement that controversies be ripe for review "prevents the courts from entangling themselves in abstract disagreements ... . Thus the courts will not decide a case where the claim involves contingent future events that may not occur as anticipated, or indeed may not occur at all." *Binker*, 977 F.2d at 753 (citations and internal quotation marks omitted); *Armstrong World*, 961 F.2d at 410-413 (declining to consider issue, where based on contingency that might never occur).

██ ██ Notwithstanding the general unreviewability of conditional orders, however, it is well-recognized that orders containing "self-executing" conditional provisions may be immediately appealed. *See* 4 AM. JUR. 2D *Appellate Review* § 183; *see also Taper v. Long Beach*, 129 Cal. App. 3d 590, 605-06, 181 Cal. Rptr. 169 (1982) (noting appealability if no further judicial act required or where mere ministerial act of entering judgment is all that remains). An order is self-executing where it does not depend for its effect on further action by the court beyond mere enforcement of the judgment or, at most, the ministerial act of entering an order of final judgment upon satisfaction of the condition. *See Yarbrough v. Yarbrough*, 144 Cal. App. 2d 610, 613-14, 301 P.2d 426 (1956); *Thompson v. Thompson*, 554 A.2d 1041, 1042-43 (D.R.I. 1989) (finding order unappealable where party could have adhered to compliance deadline set therein, and noting that conditional order not final where it "appears from the order that something remains to be done before the rights of the litigants are fixed") (citations omitted); *Taper*, 129 Cal. App. 3d at 605-06. Rather, such orders take effect automatically upon satisfaction of the stated condition. Thus, the touchstone for determining that an otherwise unreviewable conditional order is immediately appealable is whether there is an absence of any need for further action by the court to make such orders effective. The order at issue here does not fall into this latter category and, therefore, cannot be appropriately reviewed.

Despite language purporting to make it self-executing, the challenged order by its very nature cannot be executed without significant involvement by the trial court. First, the order includes a contingency that may never occur and includes no temporal guidelines or deadlines to determine when the conditional provision might go into effect, if at all. Moreover, and more significantly, the contingency presented cannot truly become automatically effective without further involvement of the court, given the fact-specific and undefined parameters of the contingency to govern whether it has, in fact, occurred.

Specifically, the order notes the condition would become effective only if the parties reach a "total impasse." The trial court did not define what constitutes a total impasse nor how it is to be determined. However, the common meaning of "impasse" refers to a "deadlock" in negotiations. WEBSTER'S II NEW COLLEGE DICTIONARY 554 (2001). The court's findings on the record are further instructive on what is required before a total impasse may be declared. Those findings indicate the trial court contemplated that the parties would first engage in "reasonable" negotiations to resolve any differences before declaring an impasse. [*See* J.A. 271-73, 277]. Similarly, the court's order explained that the alternative provision was intended to encourage the parties to "negotiate in good faith" whenever the situation calls for it. [*Id.*]. Thus, it is clear the court contemplated that the parties would engage in good faith bargaining efforts and make reasonable efforts to settle their differences before the alternative provision could be invoked.

Given this, further factual inquiry by the court would necessarily be required to determine: 1) whether the parties undertook good faith attempts to settle their differences, and; 2) whether, despite such efforts, the parties reached a "total impasse." These are issues that would necessarily involve the trial court in further factfinding and which cannot be resolved as a matter of law. The problems inherent in regarding such an order as final and self-executing are evident in the appellant's expressed concerns regarding the uncertainty in the manner in which an impasse may or may not be declared and whether a mere unilateral declaration—without any real effort to avoid an impasse—would suffice. Accordingly, this Court will reject the invitation to resolve an issue that has not, and may never, materialize and which cannot, by its very nature, become effective without further factfinding by the trial court.

## C. Preclusion From Seeking Relief From the Court

The appellant raises the additional argument that the trial court effectively barred her from seeking further legal redress, in violation of her constitutional rights. We disagree.[6]

While the right to access the courts is indisputable and requires no further discussion, the facts here do not support a finding that the appellant was barred from returning to court. The trial court's language reflected its desire to encourage the parties to amicably settle problems in the existing visitation plan as they arose. Indeed, the court noted that the purpose of the alternative plan was "to urge the parties to sit down and negotiate in good faith" if the need arose. [*See* J.A. at 271-73]. In doing so, the court echoed the frustrations and concerns of the appellant's counsel regarding the parties' need to resolve differences and to make adjustments without the need to have the court intervene at each instance or to maintain "visitation bibles," as the history of the case reflected. However, while the trial court's order noted that the alternative order should obviate the need for the parties to return to court each time they disagree on visitation schedules, this language falls far short of a declaration that the parties would be precluded from returning to court at any future time or from utilizing the statutory remedy for seeking further modifications, as provided under 16 V.I.C. § 110.

■ This case is unlike *Cyntje v. Government of V.I.*, Civ. No. 81-1501 (3d Cir. June 25, 1981), [*See* Br. of Appellant at 20 and Ct's Order & Op'n, J.A. 282-83], where the court of appeals found improper the trial court's order requiring a *pro se* litigant to subject himself to a

---

[6]  The court's statement challenged here was contained within the alternative order provision. However, because it raises a constitutional due process challenge surrounding the immediate rights of the litigants to access the courts, we will resolve that issue. *See e.g.*, *General Offshore Corp. v. Farrelly*, 743 F. Supp. 1177, 1187-89, 25 V.I. 226 (D.V.I. 1990) (noting facial challenge to constitutionality of statute was immediately reviewable, as it required no factual foundation; issues requiring factual determinations were not ripe for judicial consideration, although "purely legal or constitutional issues are generally fit for adjudication.") (citing *Pennell v. City of San Jose*, 485 U.S. 1, 11-14, 108 S. Ct. 849, 856-57, 99 L. Ed. 2d 1 (1988) (due process and equal protection issue ripe); *Duke Power Co. v. Carolina Envtl. Study Group, Inc.*, 438 U.S. 59, 81-82, 98 S. Ct. 2620, 2634-35, 57 L. Ed. 2d 595 (1978); *Gardner v. Toilet Goods Ass'n*, 387 U.S. 167, 171, 87 S. Ct. 1526, 1528, 18 L. Ed. 2d 704 (1967); *Abbott Labs. v. Gardner*, 387 U.S. 136, 149, 18 L. Ed. 2d 681, 87 S. Ct. 1507, 1515; *Exxon Corp. v. FTC*, 588 F.2d 895, 903 (3d Cir. 1978); L. TRIBE, CONSTITUTIONAL LAW § 3-10, at 80 (2d ed. 1988)).

psychological evaluation before any further papers could be filed with the court. This case does not present similar circumstances, as nothing in the language of the trial court's order affirmatively precludes either party from again returning to court as the need arose or suggests that the court would not consider requests for future modifications based on changing circumstances, as the statute permits.

## III. CONCLUSION

This Court holds that the plain language of the trial court's order did not preclude the appellant from returning to court or from invoking the procedures available under local law for obtaining modifications to custody or visitation orders as changing circumstances require. However, because the court's alternative visitation schedule is based on a contingency that is not certain to occur and which cannot be executed without further factfinding by the trial court, we decline to reach the merits of the appellant's challenges in that regard.