JOYCE O. HODGE, Plaintiff

v.

STEDMANN HODGE, Defendant

Civil No. 363-67

District Court of the Virgin Islands

Div. of St. Thomas and St. John

February 9, 1979

VICTOR G. SCHNEIDER, ESQ., St. Thomas, V.I., *for plaintiff*

MARIA TANKENSON HODGE, ESQ., St. Thomas, V.I., *for defendant*

FEUERZEIG, *Judge**

## MEMORANDUM OPINION

In contrast to the legal issues presented, the facts of this case are relatively uncomplicated. By order dated January 23, 1969, the plaintiff, Joyce Hodge, was granted a divorce absolute from the defendant, Stedmann Hodge. The decree was based upon a separation agreement worked out between the parties and their respective counsel and stipulated to in open court on January 17, 1969. The transcript for that date provides:

Mrs. [Edith] Bornn: ... The parties have agreed that the title which they jointly hold to Parcel No. 31-1, Estate Thomas, in St. Thomas, Virgin Islands shall be transferred to the husband in trust for the two minor children. That husband shall have the duty of management of this property in his capacity as trustee and shall maintain a bank account for monies collected from rent from said property and shall account for said monies on a basis as agreed upon in said agreement. Wife agrees that husband shall have the right to occupy one apartment personally free of charge —free of rent. It is further agreed that the husband shall have the right, as trustee, to hypothecate funds [sic] the trust account for the sole purpose of improvements to the said real property, which improvements shall inure to the benefit of the children, and, further, that prior to hypothecating the trust account, notice shall be given to wife, together with a detailed statement of improvements proposed—

Mr. [Alexander ]Farrelly: Mrs. Bornn, I—

(Discussion off the record)

The Court: Do I understand that the last sentence is not agreed to?

---

* Territorial Court Judge of the Virgin Islands sitting as District Court Judge by designation.

Mr. Farrelly: No, sir.

Mrs. Bornn: I was reading from Mr. Farrelly's draft.

(Discussion off the record)

Mr. Farrelly: We will let the last sentence stand.

Mrs. Bornn: —which shall be agreed upon. That it is understood by the parties that said trust account shall be for the primary purpose of meeting the higher educational expenses of the children, and that when the second child attains the age of 21, the trust shall terminate. When the youngest child reaches the age of 21 or if sooner emancipated, the trust shall terminate and title shall vest in said children. Wife waives any alimony from husband.

This is the agreement as worked out by counsel and explained to their clients and agreed to by clients in open court. Mr. Farrelly?

Mr. Farrelly: That is correct.

Mrs. Bornn: Mrs. Hodge?

Mrs. Hodge: Yes.

Mrs. Bornn: Mr. Hodge?

The Court: Mr. Hodge?

Mr. Hodge: Yes, sir.

Mrs. Bornn: Then, if your Honor please, we would proceed with the divorce as an uncontested divorce this afternoon.

Both the decree and the findings of fact and conclusions of law recite that the court has "jurisdiction of the parties and of the cause of action." The findings of fact provide in part:

3. That the parties are joint owners of certain real property described as Parcel No. 31-1 Estate Thomas, St. Thomas, Virgin Islands.

The decree provides in part:

5. That the parties shall transfer title to real property jointly owned by them and known and described as Parcel No. 31-1 Estate Thomas, St. Thomas, Virgin Islands, in trust to the two children *in accordance with the terms and conditions of the trust agreement entered into by the parties.* (Emphasis added.)

The decree and the findings apparently were drafted by counsel and approved by them, as evidenced by their

160

respective initials in the margins of both documents. They were signed by Francis L. Van Dusen, Circuit Judge of the Third Circuit Court of Appeals, sitting by designation as a District Court Judge.

The file remained dormant from January 23, 1969, until June 20, 1975, when the plaintiff, Joyce Hodge, petitioned for an increase in child support. By agreement of the parties, the 1969 decree then was amended to reflect an increase in the defendant's support obligations. The file again lay dormant for almost two years, until April 12, 1977, when Joyce Hodge moved to compel compliance with the 1969 decree, alleging that the "trust agreement" referred to in the decree was never executed and that the defendant had breached his fiduciary duties to his children. She sought enforcement of the decree or, in the alternative, removal of the defendant as trustee and her appointmnt in his stead. She also sought an accounting of the rental proceeds received from the property since 1969.

Pursuant to 16 V.I.C. § 110, the defendant cross-moved to modify the divorce decree asking the court to grant a change of custody of the parties' children and to delete paragraph 5 on the grounds of a mistake of fact. Mr. Hodge acknowledged that a trust instrument never was executed, but insisted that was Mrs. Hodge's fault. More importantly, he contends that the agreement of the parties and the order of the court was based on the assumption of joint ownership of the property, although the property actually was solely in his name. Moreover, he argues that because of the shortness of the marriage the plaintiff did not even have an equitable interest in the property at the time of the decree. Consequently, he contends the agreement is void for want of consideration and the judgment also is void because it is based on a void contract. The defendant also asserts that the property

was never the homestead of the parties; and, therefore, the judgment is void because the court lacked jurisdiction to transfer title to non-homestead real property.

Because of the number and complexity of the issues presented, counsel were directed to submit memoranda of law. Both sides have extensively briefed the procedural and substantive issues before the court. Arguments by counsel were heard on June 2, 1978,[1] and the matter came on for an evidentiary hearing on August 28, 1978.[2]

The defendant initially relied on 16 V.I.C. § 110 as the basis of this court's jurisdiction to delete paragraph 5 of the 1969 decree. That section, as construed by the Third Circuit Court of Appeals, gives the court authority to modify certain aspects of a divorce decree upon showing "such a substantial and continuing change in circumstances since the entry of the original decree as to make a continued enforcement of that decree unfair." Hodge v. Hodge, 11 V.I. 470, 478, 507 F.2d 87, 91 (3d Cir. 1975), quoting Viles v. Viles, 4 V.I. 415, 421–22, 316 F.2d 31, 34 (3d Cir. 1963); accord, Del Peschio v. Del Peschio, 6 V.I. 440, 386 F.2d 835 (3d Cir. 1967). In subsequent memoranda defendant also relied on Rule 60(b) of the Federal

---

[1] The defendant argued that his former counsel may have been grossly negligent in failing to ascertain that title to the property in question was solely in defendant's name. The defendant was given to June 20, 1978, to inform the court and opposing counsel whether he would adduce testimony on the issue of inadequacy of counsel at trial. The defendant, however, chose not to pursue this issue.

[2] At the hearing a partial settlement was announced, the defendant agreeing to provide the plaintiff with an annual accounting no later than January 30 of each year as long as the trust is operative. He also agreed to provide the plaintiff an accounting for the remainder of 1977 within 30 days of the hearing. Finally, the plaintiff withdrew her request for defendant's removal as trustee. Testimony by agreement was limited to the motion for a change of custody and to the issue of whether the trust should be considered to have failed for impossibility of accomplishment. As a result, the affidavits then on file are considered as appropriately before the court.

The testimony also caused the court to believe that the custody issue demanded a thorough psychological examination of the children, which was ordered and still is pending. Consequently, this opinion will not consider that issue.

Rules of Civil Procedure, 5 V.I.C. App. I, R.60,[3] which allows relief from a judgment upon a showing of one of six enumerated conditions.[4] Defendant in effect is requesting retrospective deletion of paragraph 5, but in the alternative, asks for a prospective deletion. As the two entail different considerations they will be treated separately.

## I. Retrospective Modification of the Decree

### A. *16 V.I.C. § 110*

■ The defendant's reliance on 16 V.I.C. § 110 for retrospective deletion of paragraph 5 of the 1969 decree is unfounded. Defendant by affidavit dated September 30, 1977, merely states that the property is in his name, but

[t]hat prior to and at the time of the divorce counsel for plaintiff and for myself did not make the proper title search to determine the legal owners of the property, but I accepted their claim that the property was jointly owned simply because we were married, and I was therefore convinced based on layman's thought and custom that the property was jointly owned by us.

This allegation essentially was repeated by the defendant's testimony. There is no allegation in the affidavit, motions or accompanying papers, however, that the *circum-*

---

[3] The Federal Rules of Civil Procedure specifically are made applicable to divorce proceedings so far as practicable and to the extent that matters of procedure are not specifically provided for by law or the rules of the court pursuant to 5 V.I.C. App. V, R. 10.

[4] Rule 60 provides in pertinent part:

(b) *Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence: Fraud, etc.* On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken.

*stances* relating to title to the property have changed since the date of judgment nor was there any testimony or offer of testimony of such a change. It is true that defendant's knowledge changed after entry of the decree, but that is immaterial in connection with a motion to modify pursuant to § 110. Nothing in the cases construing § 110 support a conclusion that changes in mental attitude or knowledge, as opposed to changes in external conditions, are to be considered in applying this section, and this court is not inclined to engraft such a reading. Moreover, defendant has not made even a colorable showing sufficient to meet the standard announced in Viles. Accordingly, he is ineligible for § 110 relief.[5]

## B. *Federal Rule of Civil Procedure 60 (b)*

As indicated, defendant also relies on Rule 60(b)(4), (5) and (6), of the Federal Rules of Civil Procedure, 5 V.I.C. App. I, R. 60(b)(4), (5) and (6).[6] First, he argues that he is entitled to 60(b)(4) relief because the court lacked subject matter jurisdiction to order the transfer of real property pursuant to a divorce proceeding.[7] In addi-

---

[5] Even were the court to consider a change of knowledge a sufficient substantial and continuing change of circumstances, the defendant in this case is barred by laches at this late date from asserting his lack of knowledge as a defense. It is clear from his affidavit and testimony that he could and should have known of his sole ownership of the property since March 30, 1966, the date the property was deeded to him. This is just short of two months before his May 28, 1966, marriage to the plaintiff, almost three years before the actual divorce and 11 years before the filing of his motion to modify. Moreover, as pointed out, a motion to modify the 1969 decree was filed by the plaintiff in 1975 and nothing was raised then by the defendant on this issue.

[6] For obvious reasons, defendant does not rely on clauses (1), (2) or (3) of Rule 60(b). Motions for relief from judgment under these clauses must be made within one year of the order's entry. Mr. Hodge's cross-motion to delete paragraph 5 of the January 23, 1969, divorce decree was not made until May 6, 1977, more than eight years after the decree's entry. As a result, defendant is ineligible for relief under 60(b)(1), (2) or (3).

[7] A divorce court only has power to transfer real property when authorized by statute, Dyndul v. Dyndul, 13 V.I. 376, 541 F.2d 123 (3d Cir. 1976), and it has been specifically held that the divorce courts of the Virgin Islands have power to dispose of the homestead of the par-

164

tion, because the parties failed to execute a written trust agreement, defendant argues that no enforceable trust was created because the Virgin Islands Statute of Frauds prohibits oral transfers of interests in realty. 28 V.I.C. § 241. That, coupled with a void judgment, the defendant contends, entitles him to Rule 60(b)(4) relief. In addition, the defendant argues that he is entitled to Rule 60(b)(5) relief because it is no longer equitable to enforce the offending paragraph. Finally, Mr. Hodge contends that he comes within the sweep of the broad language of clause (6) of Rule 60(b).

### 1. *Rule 60(b)(4)*

Defendant's argument that the judgment is void rests on 16 V.I.C. § 109 as interpreted by the Third Circuit Court of Appeals. See note 7, supra. However, if the court exceeded its jurisdiction by ordering the transfer of non-homestead realty, the defendant's remedy was by an appeal.[8] No appeal, however, was taken.

 It is well settled that litigants "cannot by their consent confer jurisdiction of the subject upon a court,"

---

ties pursuant to 33 V.I.C. § 2305. Todman v. Todman, 15 V.I. —, 571 F.2d 149 (3d Cir. 1978). The defendant contends that the court did not have specific statutory authority for what it did and thus lacked jurisdiction to dispose of his non-homestead real property.

[8] It is not, however, clear that the court exceeded its jurisdiction. If the court concluded that the property was the homestead, it clearly had jurisdiction to order a disposition of it. Todman v. Todman, supra. Also, former § 109 of Title 16 provided in part:

Whenever a marriage is declared void or dissolved the court may further decree—

(1) for the future care and custody of the minor children of the marriage as *it may deem just and proper* ... (emphasis added).

This former section, like the present § 109, vests broad discretionary power in the court. Rogers v. Rogers, Civil No. 78-20 (D.V.I., Div. St. Thomas and St. John, Sept. 21, 1978), aff'g in part and remanding, Rogers v. Rogers, Fam. No. 153-77 (Terr. Ct., Div. St. Thomas and St. John, Dec. 16, 1977). Although there was no specific finding, the court in 1969 may have concluded that the parties' agreement represented "a just and proper" manner of providing for the children's care and custody. Consequently, the decree may have been within the court's jurisdictional competence. In any event, for the reasons set forth in this opinion the court does not decide that issue.

Alton v. Alton, 2 V.I. 600, 619, 207 F.2d 667, 677 (3d Cir. 1953), cert. granted, 347 U.S. 911, 74 S.Ct. 478, 98 L.Ed. 1068, vacated as moot, 347 U.S. 610, 74 S.Ct. 736, 98 L.Ed. 987 (1954); accord American Fire & Casualty Co. v. Finn, 341 U.S. 6, 71 S.Ct. 534, 95 L.Ed. 702 (1951); People's Bank of Belleville v. Calhoun, 102 U.S. 256, 26 L.Ed. 101 (1880); 1 Moore's Federal Practice ¶0.60[4], at 624 (2d ed. 1978), and a court may sua sponte question its subject matter jurisdiction and dismiss the action at any time during the trial or even on appeal. Mansfield, Coldwater & Lake Michigan Ry. Co. v. Swan, 111 U.S. 379, 4 S.Ct. 510, 28 L.Ed. 462 (1884); Brown v. United States, 508 F.2d 618 (3d Cir. 1975) (Adams, J., concurring); 1 Moore's, supra, at 628–29; see also Rule 12(h)(3), F. R. Civ. P., 5 V.I.C. App. I, R.12. However, in the absence of an appeal, once a court determines that it has subject matter jurisdiction, its decision on the issue is res judicata between the parties and not subject to collateral attack in later proceedings. Durfee v. Duke, 375 U.S. 106, 84 S.Ct. 242, 11 L.Ed.2d 186 (1963); Chicot County Drainage District v. Baxter State Bank, 308 U.S. 371, 60 S.Ct. 377, 84 L.Ed. 329 (1940); Stoll v. Gottlieb, 305 U.S. 165, 59 S.Ct. 134, 83 L.Ed. 104 (1938); Brown v. United States, supra, 508 F.2d at 629–32 (Adams, J., concurring); Restatement of Judgments § 10 (1942);[9] see also Marshall v. Board of Education, 575 F.2d 417 (3d Cir. 1978). This is because the public policy that favors finality of judgments is no less applicable to questions of jurisdiction than it is to other matters.

---

[9] The rules of the common law, as expressed in the restatements of the law approved by the American Law Institute, shall be the rules of decision in the courts of the Virgin Islands in cases to which they apply, in the absence of local laws to the contrary. 1 V.I.C. § 4. See also Varlack v. S.W.C. Caribbean, 550 F.2d 171 (3d Cir. 1977); Murray v. Beloit, 450 F. Supp. 1145 (D.V.I. 1978).

One trial of an issue is enough. "The principles of res judicata apply to questions of jurisdiction as well as to other issues," as well to jurisdiction of the subject matter as of the parties.

Treinies v. Sunshine Mining Co., 308 U.S. 66, 78, 60 S.Ct. 44, 51, 84 L.Ed. 85 (1939), quoting American Surety Co. v. Baldwin, 287 U.S. 156, 166, 53 S.Ct. 98, 104, 77 L.Ed. 231 (1932).

Public policy demands

that there be an end of litigation; that those who have contested an issue shall be bound by the result of the contest; and that matters once tried shall be considered forever settled as between the parties.

Durfee v. Duke, supra, 375 U.S. at 111, 84 S.Ct. at 245, quoting Baldwin v. Iowa State Traveling Men's Association, 283 U.S. 522, 525, 51 S.Ct. 517, 518, 75 L.Ed. 1244 (1931). This rule applies with equal force even though the court's jurisdiction has not actually been litigated. It is enough that the parties had an opportunity where the matter *might* have been litigated. Chicot County, supra; Brown v. United States, supra (Adams, J., concurring); Restatement of Judgments § 10 Comment c.

■■ As a result of the hearing before Judge Van Dusen, the court expressly determined that it had jurisdiction of the parties and "of the cause of action." Neither Mr. nor Mrs. Hodge objected to the court's assumption of jurisdiction over them or the subject matter of the action and neither party appealed. Instead, the record supports a conclusion that both parties were satisfied with the arrangement that they had worked out and that was embodied in the court's findings and decree. Moreover, the court made a specific finding that the property was jointly owned. In view of this express finding, the court's assumption of subject matter jurisdiction and the establishment of the

trust pursuant to the parties' agreement are res judicata between the parties and are not subject to collateral attack. Consequently, the court can find no basis for concluding that relief should be granted under Rule 60(b)(4).

■ Moreover, defendant's motion is untimely. Rule 60 (b) requires that motions be made "within a reasonable time." Here defendant's motion was made eight years after the entry of the divorce decree, but he makes no attempt to explain why this should be considered reasonable. In the absence of truly extraordinary circumstances—circumstances that this court cannot conceive at the present time and that are not in any way disclosed by the defendant—a delay of eight years in filing the instant motion must be considered unreasonable as a matter of law.

■■ Even if the court lacked jurisdiction over the subject matter and the decree was not res judicata and the defendant's motion was timely, it would gain the defendant nothing because the agreement of the parties was binding and created an enforceable trust. The in-court representations of the parties and their counsel were sufficient to create an enforceable trust even in the absence of consideration.[10] Restatement of Contracts § 94 (1932); Restatement (Second) of Contracts § 94 (Ten. Drafts 1–7, 1973); Connors v. United Metal Products Co., 209 Minn. 300, 296 N.W. 22 (1941); see also Restatement (Second) of Trusts §§ 28 and 29; DeLeuil's Ex'rs v. DeLeuil, 255 Ky. 406, 74 S.W.2d 474 (1934). Nor was a writing necessary. The on-the-record assent of the parties to the terms of the trust agreement clearly was as efficacious for the establishment of the trust and its terms as a writ-

---

[10] Although no consideration was required under such circumstances, it is far from clear that no consideration was given. The agreement was entire. The plaintiff's forbearance in asserting her legal claim for alimony, regardless of her entitlement to it, may well have been sufficient consideration to sustain the agreement. Restatement (Second) of Contracts, supra §§ 76B(1)(b), (2), and 76.

ing. The statute of frauds, which has as its principal purpose the prevention of fraud, may not be used as an instrument for its perpetration. The in-court stipulation of the parties and the findings and decree based thereon are binding on the parties and the court. Cf. Swift & Co. v. United States, 276 U.S. 311, 48 S.Ct. 311, 72 L.Ed. 587 (1928); Hoffman v. Celebrezze, 405 F.2d 833 (8th Cir. 1969); Farmers Co-op Elevator Ass'n Non-Stock Big Springs, Neb. v. Strand, 382 F.2d 224 (8th Cir. 1967), cert. denied, 389 U.S. 1014, 88 S.Ct. 589 (1967); Morse Boulger Constructor Co. v. Camden Fibre Mills, Inc., 239 F.2d 382 (3d Cir. 1956).

### 2. *Rule 60(b)(5)*

Defendant also relies on that part of clause (5) that permits relief when "it is no longer equitable that the judgment should have prospective application." As that clause by its terms grants only *prospective* relief it can have no application to defendant's motion for retrospective deletion of the trust agreement or plaintiff's motion for an accounting. Marshall v. Board of Education, supra; 7 Moore's, supra, ¶60.26 [4].

### 3. *Rule 60(b)(6)*

■ Mr. Hodge also seeks relief under Rule 60(b)(6), which is a residual clause that authorizes the court, in the exercise of its sound discretion, to relieve a party "for any other reason justifying relief from operation of the judgment." While in cases of extreme hardship or injustice the clause may be liberally applied, 7 Moore's Federal Practice, supra, ¶60.27 [1], at 342–343; cf. 11 Wright and Miller, Federal Practice and Procedure: Civil § 2864, at 219–20 (1973), the rule may not be used to circumvent the time limitations of clauses (1) through (3) or in any circumstance where relief is available under clauses (1) through (5). Boughner v. Secretary of Health, Educa-

tion & Welfare, 572 F.2d 976 (3d Cir. 1978); Stradley v. Cortez, 518 F.2d 488 (3d Cir. 1975); 7 Moore's Federal Practice, supra, ¶60.27 [1], at 343–44.

Rule 60(b)(6) was not intended as, and is not a substitute for, an appeal and cannot be used to relieve a party of his choice not to appeal. Marshall v. Board of Education, supra; Martinez-McBean v. Government of the Virgin Islands, 14 V.I. 79, 562 F.2d 908, 911 (3d Cir. 1977). In this circuit, relief under 60(b)(6) is an "extraordinary" remedy granted only "upon a showing of exceptional circumstances." Marshall v. Board of Education, supra, 575 F.2d at 425; Boughner v. Secretary of Health, Education and Welfare, supra, 572 F.2d at 978; Stradley v. Cortez, supra, 518 F.2d at 493. The party seeking such relief has the heavy burden of showing that, absent the relief, an "extreme" and "unexpected" hardship will result. Boughner v. Secretary of Health, Education and Welfare, supra, 572 F.2d at 978; Mayberry v. Maroney, 558 F.2d 1159, 1163 (3d Cir. 1977).

██ In the present case, defendant Hodge's motion arguably comes within reasons (1), (4) or (5) of Rule 60(b). This fact alone prevents the defendant from relying on clause (6). Stradley v. Cortez, supra, 518 F.2d at 493. Moreover, no exceptional circumstances have been shown to justify the extraordinary relief requested. Finally, like reasons (1) through (5), the motion must be made within a reasonable time after judgment. As noted, eight years' delay is per se unreasonable in the absence of an extraordinary and convincing reason for such a delay.

Accordingly, defendant's motion for retrospective deletion of paragraph 5 will be denied.

### II. Prospective Modification of the Decree and Termination of the Trust

Defendant's motion also seeks a prospective termination

of the trust by deleting paragraph 5 of the 1969 decree. Having determined that a valid and enforceable trust was created by the parties' agreement and the decree entered as a result of that agreement, the defendant can obtain this prayed for relief pursuant to Rule 60(b) or 16 V.I.C. § 110[11] and by showing that the purposes for which the trust was established are impossible of accomplishment. Restatement (Second) of Trusts § 335 (1959).

At the August 28, 1978, hearing the defendant testified that he commenced construction of the house in December of 1966 while the parties were separated. Subsequently, he and the plaintiff reconciled and lived together during late January or February of 1967. The parties again separated, this being within three or four months after their second child was born. At no time did the plaintiff ever reside in the house at 31-1 Estate Thomas. Moreover, according to Mr. Hodge, the plaintiff's only contribution was a $1,500 loan and her co-signing, in May of 1967, a $38,000 mortgage note on the property.

The house, which was completed in August of 1967, only a few months before the action for divorce was instituted, was constructed principally through the efforts of the defendant, who at the time was a mason, laborer, and draftsman. The structure then consisted of three one-bedroom apartments and a large cistern. A finished concrete roof was not put on the house, however, as it was the intention of the defendant to add a second story of apartments for rental purposes. To date this has not been done. In any event, almost from its inception, defendant has lived in one of the one-bedroom apartments and continues to reside there today.

In 1970 or 1971 the defendant, in an attempt to produce additional income, added two efficiency apartments to the

---

[11] See discussion at p. 162 supra.

downstairs of the house. This was done at his own expense and, insofar as the record reflects, the defendant has never been reimbursed. Each efficiency apartment is no more than one big room and the two apartments share a common bathroom located upstairs. When rented they each generate approximately $75.00 per month. The defendant testified that the two one-bedroom apartments have been renting for $150.00 per month each.[12] Thus, the four apartments together can generate a rental income of $450.00 per month.

The testimony of Mr. Hodge and a building contractor, Ulysses A. Pilgrim, revealed, however, that the two efficiency apartments have been rendered uninhabitable since approximately March of 1978, when they were flooded by heavy rains. To make them inhabitable it will be necessary to clean the apartments, waterproof them to prevent leaks in the sides of the walls, repair the floor tiles, repair damaged electrical circuits and erect a canopy to prevent future rains from inundating them. This will cost approximately $3,100.

In addition, repairs must be made to the entire structure. If a second floor is not going to be built, a reinforced concrete roof must be added to prevent leaking. This would cost between $3,500 and $4,000. Six new windows need to be purchased and installed at an estimated cost of $750; aluminum screens need to be replaced at an estimated cost of $150, and the entire building inside and out needs to be painted at an estimated cost of $1,800. The total cost to make the building and the efficiency apartments inhabitable and profitable thus appears to be no less than $9,300.

The defendant contends that it is impossible for him as trustee to raise such a large sum since the trust to date has

---

[12] The court notes that according to the accounting of the defendant one of the one-bedroom apartments was renting for $160 per month since December of 1973. This discrepancy was not questioned by the plaintiff. Accordingly, this court relies on defendant's testimony.

been unprofitable. In fact, he contends that since 1967, the year of the structure's completion, there has been a net loss of $3,721.62.[13] Moreover, defendant contends that it would cost approximately $40,000 to add a second story to the structure to effectuate his original plans. He, therefore, submits that the trust has failed to accomplish its purpose of producing income for the educational needs of the children and thus should be terminated.

Preliminarily, it should be noted that based on defendant's figures the net loss of the trust estate is $2,217.32, not $3,721.62 as claimed. This latter figure impermissibly includes losses incurred in 1967 and 1968, before the establishment of the trust. Also irrelevant are the figures and contentions of the defendant regarding his original intent to add a second story to the structure. Whatever his intentions before the trust, they were not incorporated into the trust agreement and this court, therefore, cannot consider them. Consequently, on this ground the trust agreement is not impossible of accomplishment.

Essentially, defendant's motion rests on the alleged inability of the property to generate sufficient income to meet expenses and provide a fund for the educational needs of the children. In this connection defendant also asserts that as trustee he is under no duty to expend his personal funds to make necessary repairs and improvements. As a

---

[13] The summary provided by the defendant shows the following net losses and gains for each year.

| Gains | | Losses | |
|---|---|---|---|
| 1971 | $ 603.72 | 1967 | $ 856.77 |
| 1972 | 331.71 | 1968 | 647.53 |
| 1974 | 330.07 | 1969 | 928.54 |
| 1975 | 230.61 | 1970 | 645.51 |
| | | 1973 | 1,229.85 |
| | $1,496.11 | 1976 | 558.99 |
| | | 1977* | 350.54 |
| | | | $5,217.73 |

* For January through March.

173

result, he concludes that the trust should be terminated and that the property be deemed to be solely his, consistent with the original deed to the property.

■ The court begins its analysis with the general rule that a trust, once created by a settlor, cannot be revoked or altered unless the trust instrument specifically reserves such a power. Restatement (Second) of Trusts § 330, 331 (1959); In re Padgett, 14 V.I. 285. (Terr. Ct. 1978).[14] In the absence of express words of reservation, no power to revoke is inferred. Colbo v. Buyer, 235 Ind. 518, 134 N.E.2d 45 (1956).

There is an exception to this general rule where the purposes of the trust fail or become impossible of accomplishment. Then the trust may be judicially terminated. Restatement, supra, § 335. The trust will not be terminated, however, where only one of several purposes becomes impossible; the "whole purpose" of the trust must be defeated before termination will be ordered. Restatement, supra, § 335, Comment a, Fewell v. Republic National Bank of Dallas, 513 S.W.2d 596, 599 (Tex. Civ. App. 1974); see also In re Padgett, supra.

■ In determining whether the purposes for which the trust was established have been defeated, the court must look to the intent of the settlor. Restatement, supra, § 335, Comment a; McFarlane v. First National Bank of Miami, 203 So.2d 57 (Fla. Dist. Ct. App. 1967); Agism v. Tillou Realty Co., 56 N.J. Super. 18, 151 A.2d 421 (Ch.

---

[14] Where a settlor intends to reserve a power of revocation, but mistakenly omits the reservation from the trust instrument the settlor can have the instrument reformed, Restatement (Second) of Trusts § 332 (1959), or if the trust was created by the settlor as a result of fraud, duress, undue influence or mistake, the settlor can have the trust set aside. Id. § 333. Clearly there is no evidence to support relief under § 332, and the only possible basis for relief under § 333 would be mistake. For virtually the same reasons that the defendant cannot obtain relief from the judgment under Rule 60(b), he must be held to have no basis for relief under this section of the Restatement.

Div. 1959); Damiani v. Lobasco, 367 Pa. 1, 79 A.2d 268 (1959). If the dominant purpose of the settlor in creating the trust still can be achieved by permitting the trustee to deviate from the express or implied terms of the instrument, equity will permit the deviation and the trust will not terminate. Restatement, supra, § 167. However, if the trust has failed and must be terminated, the title to and possession of the trust res, in this instance the real property, must be transferred to the *beneficiaries* and not to the settlor as argued by Mr. Hodge. Restatement, supra, § 345.[15]

■ The defendant does not argue that a power of revocation was reserved, but he does contend that the trust has failed because it has not produced a net profit from its rental income since 1969. The court does not agree for two reasons. First, any profit that was realized was to be placed in a "trust account." As stated by Mrs. Hodge's then attorney, it was the "primary purpose" of the *trust account*, and not of the trust as a whole, to accumulate funds for the boys' higher education. At least of equal importance is the trust's purpose to delay the minors' enjoyment of the property until the youngest of the two children is emancipated. It is not until this time that the trust is to terminate and legal title is to vest in the minors. Cf. In re Padgett, supra.

Second, and perhaps more important, is the fact that the court is not convinced that the property is unable to produce a net profit. In four of the six full years since the basement apartments were constructed—1971, 1972, 1974, and 1975—the property yielded a net profit. It should be

---

[15] Defendant relies on § 411 of the Restatement, supra, for the proposition that the beneficial interest should revert to him when the trust fails. This issue need not be reached, though, in view of the court's conclusion that the trust has not failed. The court notes, however, that the transfer of property was not "gratuitous," as is required for application of § 411, but rather was done as part of the bargain the parties negotiated at the time of their divorce. Thus, § 411 is inapplicable.

noted that for one and one-half of the four years that a profit was produced all four of the rental units were being rented and for the remaining two and one-half years both one-bedroom apartments and at least one efficiency unit were being rented.[16] In contrast, in 1973, the year of the property's greatest net loss, one of the one-bedroom apartments was vacant for seven months,[17] and one efficiency apartment did not produce income for two months. The failure to keep the property fully rented accounts for $1,200 of the $1,229.35 claimed loss.[18] Moreover, in 1976, one efficiency apparently was not rented for the entire year,[19] and one one-bedroom apartment remained unrented for three months. Had both apartments been rented throughout the year at the stated rentals they would have produced $1,350 in additional income, or a net profit of $791.01.[20]

The court therefore is of the belief that of the twin purposes of the trust—to delay the enjoyment of legal title to the res and to produce income for the beneficiaries— one purpose is fully realizable and in no way impossible of

---

[16] From January to May, 1971, both one-bedroom apartments and one efficiency were rented, producing $355 per month. For the remainder of the year, the second efficiency also was rented, producing $430 per month. In 1972, all four apartments were rented, producing $430 per month. For 1974 and 1975, both one-bedroom apartments and one of the efficiency apartments were rented, producing $385 per month. For each year's profit see footnote 13, supra.

[17] March, April, May, June, September, October and November.

[18] No explanation for this period of protracted vacancy was offered by the defendant.

[19] This also was the case in 1974 and 1975, when the property showed a profit. In fact, both efficiencies apparently have not been rented simultaneously since October of 1973. Whether one is totally uninhabitable or whether the defendant has been unable or unwilling to rent both units is not revealed by the record. Moreover, it is not for the court to speculate or infer, in the absence of evidence, that one is incapable of being rented.

[20] Similarly, for two of the three months for which figures are available for 1977, one apartment was vacant, accounting for a loss in rental income of $300. The efficiency was vacant for all three months, bringing the total rental loss to $525 for the three month period. The $350.54, which the defendant claims as a net loss for those three months would have been more than offset by the $525 that the apartments would have produced had they been rented for those months.

176

accomplishment. With respect to the other, the court is not convinced, based on the evidence before it, that the property cannot be profitable. It was defendant's burden to establish that it could not produce a profit and this he failed to do. No evidence was adduced to show what efforts were made to make the property profitable or to secure funding for the needed repairs. Thus, there has not been a sufficient showing to justify a conclusion that the trust has failed to accomplish its purpose. In addition, there has been no showing of a substantial and continuing change in circumstances to warrant termination of the trust under 16 V.I.C. § 110.[21]

 The problem with respect to obtaining funds for the needed repairs remains.[22] Several possible alternatives present themselves. The trustee might pay for the repairs out of his personal funds, for which he would be entitled to reimbursement and for which he would obtain a lien on the property. Restatement, supra, §§ 244 and 345,.

---

[21] Nor may termination be predicated on clauses 4, 5 or 6 of Rule 60(b).

Clause 4 of Rule 60(b) is clearly inapplicable to defendant's request for relief. It having been determined, supra, that the judgment was not void, no modification of the trust is cognizable under this clause.

Reliance on clause 5 is addressed to the sound discretion of the trial court, and relief may be granted only if equitable grounds are established. 7 Moore's Federal Practice, ¶60.26[4], at 331. Plaintiff's basis for equitable relief rests on his initial mistake regarding title to the property. Having determined that he is not entitled to retrospective modification based on this mistake, the court finds that he also is not entitled to prospective modification. The court notes that the defendant has been denied neither the use of his apartment nor of the proceeds from the property. Moreover, any improvements he may have made on the property are chargeable to the trust res pursuant to the agreement. Accordingly, defendant has not demonstrated that equity requires a prospective termination of the trust provisions of the divorce decree.

Defendant also may not invoke clause 6 of Rule 60(b) because no exceptional circumstances justifying the extraordinary remedy of Rule 60(b) have been presented. Finally, the defendant has failed to demonstrate that his motion was made within a reasonable time.

[22] The authority of the trustee to pay for repairs clearly is contemplated by the agreement, which makes provision for payment for "improvements" to the property. The power to make needed repairs is included in the authority to make improvements. Moreover, since repairs are necessary to make the property productive, authority to make them may be inferred. Restatement, supra, § 188. In any event, this court has the power to authorize the trustee to make repairs. Id. § 167.

177

Comment b.[23] The trustee also could mortgage the property to obtain funds for the necessary repairs. Restatement, supra, § 191, Comment b, and § 188; cf. 15 V.I.C. § 1006.[24] The defendant might also seek a contribution from the children's mother. Cf. Restatement, supra, § 176, Comment c. If she advances funds, she too would be entitled to a lien on the property. Finally, the property could be sold, see Restatement, supra, § 167, Comment a, Illustrations 6, 8, and 9; § 190, Comment c; cf. 15 V.I.C. § 913 (a), and the proceeds therefrom placed in trust for the children. See Restatement, supra, § 336, Comment b; see also Hughes v. Neely, supra; cf. 15 V.I.C. § 913(b).[25]

 The defendant must understand, however, that as trustee he is under a *duty* to the beneficiaries to use reasonable care and skill to make the property productive. Restatement, supra, § 181; 15 V.I.C. § 1002; see also Restatement, supra, §§ 174, 176; cf. 15 V.I.C. § 825(2). Failure to do so is a breach of his fiduciary duty and may also constitute waste. Cf. 15 V.I.C. § 881(a)(5). He also owes a duty of loyalty to the beneficiaries and is under a duty

---

[23] The court wishes to make clear that while the trustee has a duty to use reasonable care to preserve the trust property, Restatement, supra, § 176, the trustee is under no duty to expend personal funds for the benefit of the trust. Id. Comment c. However, if he elects to do so (a not entirely unreasonable possibility in view of the parental relationship between the trustee and the beneficiaries) he will obtain a lien on the property.

[24] The court believes that § 188 (power to incur expenses) and § 191 (power to mortgage or pledge or borrow money) of the Restatement, supra, give the trustee the authority to mortgage the property to obtain funds to make the needed repairs. However, to avoid any uncertainty, the court will authorize the trustee to mortgage the property, Restatement, supra, §§ 167, 191, Comment d, and will fashion its decree accordingly. At the hearing, the defendant suggested that existing encumbrances on the property and its income potential make it impossible to refinance the property. That may or may not be the case. The court, however, does not believe it can so conclude on the evidence presented and cannot appropriately take judicial notice of this. Federal Rules of Evidence § 201.

[25] This listing of possible alternatives should not be construed as limiting the avenues that might be pursued by the trustee. The court has not attempted to exhaust all possible courses of action available to the trustee or to direct any specific course of conduct. This is properly within the scope of the powers and discretion conferred on the trustee. See Restatement, supra § 186, Comment d; § 187.

to keep and render accounts. Restatement, supra, §§ 170 and 172; cf. 15 V.I.C. § 882(b) and 561 et seq. This last obligation was expressly imposed on the trustee by the trust agreement, but was ignored until the plaintiff's motion. In addition, although the property was profitable for four years, the defendant failed to establish or maintain a trust account for the children, despite an express requirement to do so by the trust agreement.

██ To ensure that these obligations are met, the court will enter an order directing the trustee to do all that is necessary—including the mortgaging or the selling of the property—to make the trust productive. Quarterly accounts are to be made and submitted to the plaintiff. The defendant also shall be required to establish a trust account for the children within one month after the first month the property shows a profit. Failure of the defendant to meet these obligations will constitute grounds for removal and appointment of a new trustee. Restatement, supra, § 107.